559 So.2d 758 (1990)
Tanya PAILLOT, d/b/a Olde Saloon
v.
Ernest WOOTON, in his capacity as Sheriff of Plaquemines Parish, Luke Petrovich, in his capacity as Plaquemines Parish President, and Larry Dickinson, Commissioner of the Office of Alcoholic Beverage Control.
No. 89-CC-2685.
Supreme Court of Louisiana.
April 6, 1990.
George Pivach, II, Joyce Cossich, Pivach, Cossich & Pivach, Belle Chasse, Mack Breaux, New Orleans, for applicant.
*759 Joseph Defley, Jr., Port Sulphur, Robert Roshto, Baton Rouge, for respondent.
DIXON, Chief Justice.
At issue is whether the Plaquemines Parish Code of Ordinances violates due process by permitting revocation or suspension of liquor and beer permits and occupational licenses without prior notice and hearing.
Plaintiff Tanya Paillot owned a bar in Empire, Louisiana called the "Olde Saloon." On November 3, 1989, the Plaquemines Parish Sheriff and President, along with a representative of the state Alcohol and Beverage Control Board, suspended the bar's alcoholic beverage permit, seized plaintiff's occupational license and ordered her to cease operations. Although no hearing or notice was provided prior to this suspension, plaintiff was told she could appear at the next scheduled parish council meeting, which was to be held six days later. On November 8, plaintiff filed suit, alleging that defendants' suspension of her permits and license without prior written notice and hearing violated due process and state statutes dealing with revocation of licenses. In the petition, plaintiff asked for an injunction against the suspension and sought damages for the losses she suffered by having to close.
In support of their action, defendants contended that immediate suspension of plaintiff's license was justified because she was operating in violation of parish and state liquor laws. Plaintiff is alleged to have allowed minors to frequent her establishment and purchase alcoholic beverages. In addition, she allegedly served intoxicated persons and enticed customers by sponsoring a "Drink Until You Drop," pay-one-price special. More particularly, defendants alleged that on October 29, 1989, a seventeen year old girl and her twenty-seven year old male companion became intoxicated at the Olde Saloon and died in an automobile accident shortly after they left the bar. The permits were seized five days after this incident. In response, plaintiff asserts that the license suspension is merely the last in a long series of harassing incidents, including constant raids and surveillances. She contends defendants refused to allow her to hire off-duty deputies as "bouncers," using insurance problems as a pretext.
The trial judge reasoned that state law, recognizing the sale of alcoholic beverages as a lawful calling, affords persons engaged in this occupation the due process of law and that such persons are thus entitled to a hearing prior to deprivation of their licenses, which represent a form of property rights. Because the applicable parish ordinances authorize revocation or suspension of an occupational license, beer or liquor permit without a hearing, the trial judge concluded the ordinances violated the state and federal constitutions. The trial court issued a preliminary injunction,[1] ordering defendants to return both plaintiff's occupational license and the beer and liquor licenses, pending a hearing. The court expressly issued no opinion on whether valid grounds for revocation or suspension of plaintiff's licenses existed. However, subsequent to the issuance of the injunction, the parish council conducted a hearing and, on November 28, 1989, again suspended plaintiff's beverage license for serving minors, for filing false tax records, and for having made false statements in applying for her license. In the meantime, defendants appealed the trial judge's ruling on the constitutionality of the parish ordinance. Pursuant to the Louisiana Constitution, the court of appeal transferred the matter to this court.[2]
One of the Plaquemines Parish ordinances dealing with alcoholic beverages provides:
"(d) If any disturbance of the peace, public nuisance or other violation of state law or of this chapter is committed on *760 said premises [of businesses licensed to sell beer or liquor], the president of the council with the approval of the commissioner of finance or the sheriff, is hereby authorized to suspend or revoke said permit [to sell beer or liquor] ... In case of such suspension or revocation, permittee may appeal to the council for a hearing, to remove or recall the suspension or revocation, pending which hearing no liquor or beer shall be sold by permittee..." Plaquemines Par. Ord. § 4-14.
The effect of this ordinance is to allow, in instances where parish officials believe even minor state or parish laws have been violated, immediate suspension of a liquor license with the opportunity for the permittee to seek a subsequent hearing before the council. Defendants contend this ordinance allows them to impose merely a temporary suspension in situations where the public health and safety are endangered, but we find no such restrictive language in the ordinance.
The parish ordinance dealing with licenses and taxation make similar provision for revocation of occupational licenses:
"... [I]f any violation of Louisiana law or parish ordinance is committed on said [licensed] premises, the [parish] council, through its president, with recommendations from the director of administration or the sheriff, may suspend or revoke the occupational license to continue to conduct such business, and the parish fiscal officers shall reimburse the licensee for the balance of the year's license tax from such date of suspension or revocation." Plaquemines Par. Ord. § 14-26. (Emphasis added).
The defendants offer these ordinances as authority for their suspension of plaintiff's license and permits and their order that she cease operations. Due process was satisfied, they contend, because plaintiff was entitled to a expedited hearing a week after the permits were seized. Defendants contend that plaintiff's possession of a liquor license is a privilege, not a right, and that they have a duty to exercise their police powers to protect the safety, health and welfare of parish citizens.
Plaintiff contends that the seizure of her permits and license served as deprivation of a protected interest and that constitutional principles required a pre-deprivation hearing. At the trial court hearing on her injunction request, she disputed the facts upon which the suspension was based and contended that the parish, if allowed to suspend or revoke licenses without complying with the fact finding process afforded by a hearing, could act arbitrarily and capriciously.
The Louisiana Constitution requires that "No person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. 1, § 2. Due process analysis involves three questions: (1) whether the interest is or is not protected by due process; (2) if it is, whether due process requires some kind of hearing, and (3) if it does, what kind of hearing is required. Davis, Administrative Law of the Eighties, § 13:1-1 (1989). The well settled rule is that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." Haughton Elevator Division v. State of Louisiana, 367 So.2d 1161, 1165 (La.1979).
Any significant taking of property by the state is within the purview of the Due Process Clause. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Even a temporary, nonfinal deprivation of property is nonetheless a "deprivation" within the contemplation of the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Due process ordinarily requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest. "Only in a few limited, `extraordinary' or `truly unusual' situations has the [United States] Supreme Court allowed outright seizure without opportunity for a prior hearing or other effective substitute safeguards." Wilson v. City of New Orleans, 479 So.2d 891, 902 (La.1985). Finally, "[i]t has been the uniform trend throughout the country to require that a hearing be held prior to the revocation, suspension, or modification of an existing license to engage in *761 a business or profession." Louisiana State Bar Association v. Ehmig, 277 So.2d 137, 139 (La.1973).
This court has recognized that:
"... the sale of alcoholic beverages in Louisiana is a lawful calling. It is also correctly recognized that under the police power of the State, ... such business may be regulated ... and that such regulations must be pursuant to a legitimate exercise of the State's police power, which includes the respecting of constitutional guarantees ..." Reynolds v. Louisiana Board of Alcoholic Beverage Control, 248 La. 639, 646, 181 So.2d 377, 379 (1965).
Persons engaged in the sale of alcoholic beverages, while subject to the lawful exercise of regulation by the governing authority's police power, "are entitled to stand equally before the law and to be accorded due process of law." Nomey v. State of Louisiana, 315 So.2d 709, 713 (La.1975). La. Const. art. 1, §§ 2 and 3.
Merely asserting that a statute falls within the police powers does not ensure its validity; there must be an obvious and real connection between the regulation and its purpose, and the regulation must be reasonably adopted to accomplish its end.
"A statute or ordinance which has no real, substantial, or rational relation to the public safety, health, morals, or general welfare is a palpable invasion of rights secured by fundamental law and cannot be sustained as a legitimate exercise of the police power. One application of the familiar rule that validity of an act is to be determined by its practical operation and effect, and not by its ... declared purpose, is that a constitutional right cannot be abridged by legislation under the guise of police regulation ... The legislature has no power, under the guise of police regulations, arbitrarily to invade the personal rights and liberty of the individual citizen, to interfere with private business or impose unusual or unnecessary restrictions upon lawful occupations, or to invade property rights." Schwegmann Brothers v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 171-72, 43 So.2d 248, 256 (1949).
Both state and federal law provide that if one is to be deprived, based on a factual determination, of an interest that is protected, due process requires, at a minimum, oral or written notice of the evidence supporting the proposed deprivation and the opportunity to present a contrary version of the facts. The United States Supreme Court has held that a student facing a ten day temporary suspension from public school is entitled to notice of the charges against him and an opportunity to present his side of the story. "Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary." Goss v. Lopez, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). The due process clause requires at least "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." Goss, supra at 581, 95 S.Ct. at 740.[3]
In our consideration of the scope of due process, this court has held that an informal administrative procedure for entertaining complaints of car owners prior to "booting" of their vehicles is required in order to "afford reasonable assurance against erroneous or arbitrary deprivation of property which may be a person's sole means of transportation." Wilson v. City of New Orleans, supra at 900. We recognized that a vehicle is not only a necessity of modern day life, but that deprivation of a person's mode of transportation, even for *762 short periods, could drastically affect one's livelihood. We concluded the delinquent ticket payer has no right, before his vehicle is booted, to cross-examine or call witnesses, nor to litigate his guilt or innocence of the parking violations, but is entitled to question whether the criteria for booting his vehicle have been met.
As both the Wilson and Goss cases demonstrate, notice and hearing requirements do not always require "trial-type" proceedings but fluctuate in complexity with the nature of the interest at stake. In many instances, informal proceedings can satisfy due process concerns since "`due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances' ... [D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). At the same time, the benefits of reducing the chance for error and of bolstering the impression that government is operating fairly outweigh the insignificant costs to government of providing a summary of evidence and receiving an informal written or oral response. 2 Davis, Administrative Law Treatise, § 13:11-13:13 (1979).
Because in this case the license and permits were again suspended when a hearing was finally held by the council almost a month after the initial government action, there is reason to believe plaintiff may have committed violations which justified suspension of the permits. However, "[t]o one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits." Wilson v. City of New Orleans, supra at 894, citing Coe v. Armour Fertilizer Works, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915). Militating against the exigencies of state regulation and the danger of unilateral, perhaps arbitrary action are these important considerations:
"`Fairness can rarely be determined by secret, one-sided determination of facts decisive of rights ... Secrecy is not congenial to truth-seeking and self-rightousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" Goss, supra at 580.
The trial judge recognized that under Louisiana State Bar Association v. Ehmig, supra, emergency action may be proper pending a hearing when matters of public health and safety are involved. In part because no hearing had been conducted, the trial judge was not convinced that the evidence in this case supported the allegation that the traffic deaths cited by defendants were connected to activities at plaintiff's bar. In addition, the trial judge was unsure that the circumstances offered in justification of the initial, unnoticed suspension constitute the type of emergency situation which dispenses with the need for notice and hearing. Under the facts before us, we agree.[4]
The incidents upon which defendants based the initial suspension of plaintiff's licenses included the death of a minor in an automobile accident which occurred five days before the state officers ordered plaintiff's bar closed. After the trial court ordered the licenses returned, a public hearing was held and the suspension was reimposed. The basis of this second suspension included the charge made initially that plaintiff served minors and the additional charges that she falsified tax records and other documents. Defendants have offered no reasons why any of these allegations could not have been made known to plaintiff so she could have responded before the permits and occupational license were suspended. Due process dictates that *763 such notice should have been given and that plaintiff should have been afforded a hearing at which she would have had opportunity to present a rebuttal.
We find plaintiff was deprived of due process because her beer and liquor permits and occupational license were suspended by parish officers without prior notice and hearing. The judgment of the trial court finding the Plaquemines Parish Ordinances §§ 4-14 and 14-26 unconstitutional is affirmed, at the cost of appellant.
[EDITORS' NOTE]
NOTES
[1] The trial judge severed plaintiff's damages action since that claim was not triable in the summary proceeding dealing with the injunction issue.
[2] "In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional ..." La. Const. art. 5 § 5(D).
[3] In most cases, the informal hearing process required by this decision involves merely discussing with a student the misconduct which has occurred only moments before. Nevertheless, such opportunity must be provided. It is only when a student poses a continued threat of danger to persons or property or disruption to the academic process that the necessary notice and rudimentary hearing are allowed to follow removal of the student from school. Goss, supra at 581, 95 S.Ct. at 739-40.
[4] The trial judge believed that only building code violations and construction and health inspections qualified as adequate emergency actions to justify dispensation with notice and hearing requirements. We neither adopt that conclusion nor address what emergency situations would be adequate to justify such dispensation since the question is not before us.