615 So.2d 1347 (1993)
Laquietta PARKER, et al.
v.
The FRENCH MARKET CORPORATION.
Robert ANDERSON
v.
FRENCH MARKET CORPORATION.
Nos. 92-CA-0495, 92-CA-0506.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 1993.
*1348 Marc H. Morial, New Orleans, for plaintiffs, appellants Laquietta Parker d/b/a Handbags Unlimited, Douglas Hong d/b/a Pacific Ocean Imports and Mehrunnisa Schermohmad d/b/a Nishi Imports.
Brian M. Begue, New Orleans, for plaintiff, appellant Robert Anderson.
Before BARRY, BYRNES and WARD, JJ.
BARRY, Judge.
Several vendors at the Flea Market in the Vieux Carre appeal the denial of a preliminary and permanent injunction to *1349 prohibit the French Market Corporation from allocating stalls based on a recent tenure list of vendors.[1]
In one lawsuit the City of New Orleans was named a defendant through the French Market Corporation, an agency of city government. The other suit cited "French Market Corporation, a public benefit corporation funded by the City of New Orleans, ... an agency and instrumentality of City government." French Market filed exceptions of no cause and no right of action based on its private, nonprofit status, but the court never ruled on the exceptions. A temporary restraining order to "prohibit the City of New Orleans and its French Market Corporation" was granted. The vendors' cases were consolidated and a preliminary and permanent injunction was denied.
The trial court's reasons for judgment state:
The evidence will indicate that French Market Corporation has been besieged with problems over the years as to the allocation of the various space outlets in their flea market located in the French Market in the French Quarter. The French Market Corporation decided to allocate their spaces according to a new revised tenure list. It is this tenure list and the way it was compiled that the plaintiffs have complained about and sought these injunctions. The Court understands why the suits were brought but is of the opinion that the preliminary and permanent injunction should and is hereby denied to the plaintiffs. The Court is of the opinion that the French Market Corporation did not violate any of the due processes or the taking of any of the properties of the plaintiffs herein. The Court is of the opinion that it should not substitute its judgment for the French Market Corporation. This is a very difficult job that they have about allocating spaces and it was decided to come up with a tenure list. The plaintiffs protest that it was not an accurate way in which it was done. I should say admittedly it was not a perfect system but a system that did deal in a fair way and therefore the Court is of the opinion it should not interfere with the administrative board. It feels that constitutional rights of the plaintiffs have not been denied.
Plaintiffs claim that the process by which the tenure list was compiled was arbitrary, discriminatory, deprived them of property rights, and violated substantive and procedural due process.

THE RECORD
French Market submitted numerous documents including the Bruno & Tervalon lists dated December 1990 and May 29, 1991 and the French Market computer generated list dated July 21, 1991.
The French Market also submitted the affidavit of Louis Costa, its executive director since 1980, who stated that the tenure system at the Flea Market dated back to the time of the Abba Foundation. Since May, 1979 French Market took over management of the Flea Market. The Flea Market was held on weekends until 1984, after which it became a seven day operation involving an increased number of vendors.
Costa said the Board's first written policy, on June 1, 1980, referred to "priority monthly space" which was the beginning of an assignment process. In an effort to resolve many problems, on June 1, 1988 a Board policy (documenting existing policies) went into effect. A public hearing was held at the City Council Chamber in March, 1989 and 95 percent of the vendors signed for a copy of the written policy. The Board advertised and hired a national consultant whose final report in May, 1990 recommended that market space be allocated on tenure. According to Costa, vendors contested the validity of dates on the tenure list, not the concept of a tenure list.
*1350 Costa stated that a committee of Board members was authorized to hire the firm of Bruno & Tervalon, C.P.A.'s, to prepare a tenure list based on rental receipts. It was decided that an absence of 30 days from January 1, 1980 to May 31, 1988 would cause loss of a vendor's tenure. From June 1, 1988 to December 31, 1989, 28 days was the basis for forfeiture. No staff or administrative personnel of French Market were allowed to participate in the process.
Costa's affidavit noted that the first list was submitted for vendors to review on October 19, 1990. It was posted and distributed in the Flea Market and placed in The Times-Picayune. The vendors were not pleased and the Board made changes. Sales tax receipts as well as rental receipts were allowed to establish tenure, and the 30 day absence rule prior to June 1, 1988 was eliminated because many vendors were not aware of that policy. A second list was submitted for review in December 1990 but was rejected due to the vendors' dissatisfaction.
According to Costa, in February 1991 the Board appointed a Tenure Review Committee to receive appeals by vendors. Vendors were notified that they had until March 11, 1991 to submit a written appeal as to their position. The Board adopted a tenure list and vendors were allowed to explain their claims to the Board. Costa conceded that Kenneth Ferdinand, the Market's director, gave him information about the incorrect placement of vendors above Anderson on the tenure list; however, Costa and Ferdinand had no input in formulating the list.
French Market also submitted an August 16, 1991 letter to Costa by Waldo Moret, a CPA with Bruno & Tervalon. According to Moret, prior to June 1, 1988 rental receipts were used to determine if a vendor was absent for 30 days. After June 1, 1988 the basis was 28 days. Moret's firm prepared a tenure list which was issued in October, 1990. Over 400 vendors responded before a November 15, 1990 list was made and vendors were given fifteen days to respond.
According to Moret's letter, the Board established a review committee to hear appeals in March 1991. Thirty vendors (out of 450) appealed. The firm's job was to compile a list based on rental receipts in the possession of French Market Corporation. Later, sales tax receipts were also considered. After the first tenure list there were problems and a second list was prepared. During the process about 400 to 500 vendors contacted Moret. Hong and Schermohmad appealed but did not have tax or rental receipts to prove their tenure. Anderson did not contact Moret because he did not have any receipts.
Mr. Ferdinand, French Market's market director since 1980, testified that there had been several criteria used to assign locations over the years, including quality of the merchandise, previous occupancy, sales tax receipts, and a first-come, first-serve basis. The 28 day rule for loss of seniority went into effect in 1988. Ferdinand testified that missing more than 28 days prior to 1988 had no effect. If a vendor was in the Flea Market in 1975 and returned in 1987 with continuous rental thereafter, the tenure date was 1975. There was an obvious inequity among the vendors.
Ferdinand testified that no member of the French Market staff had input in developing the tenure list by Bruno & Tervalon. Ferdinand said he notified Costa of problems and misinformation; however, Ferdinand was not allowed to provide information to the C.P.A. firm. He said that he knew of vendors whose position on the list was questionable and that the list was very unfair to some vendors.
According to the December 1990 list, the May 29, 1991 list and the July 12, 1991 list, Anderson's position was # 98, # 111, and # 117 respectively. Ferdinand said the first two lists were prepared by Bruno & Tervalon and the last list was a French Market computer printout. A letter regarding the appeal process was duplicated and set out in the French Market letter, but each vendor had to pick up the letter. Notice was never mailed to the vendors. Ferdinand stated that a vendor could appeal their rank but could not question another vendor's placement. Ferdinand said the appeal process was meaningless.
*1351 Ferdinand testified that French Market set aside a special handicraft area in the "A" section of the Market. He said Anderson, a handicraft vendor, had been assigned to that section. After the list was created Anderson was displaced from his stall. Ferdinand stated that he knew of at least five or six people ahead of Anderson whose placements were questionable. He testified that vendors who operated stalls continually, paid rent and sales taxes timely and abided by the rules, expected to rent their same stall as long as they abided by the rules (even though there was no written lease). A handicraft vendor with a high number could not be assigned to the main aisle or a protected area.
Robert Anderson, plaintiff, a vendor since 1988, testified that he had not missed more than 28 or 30 consecutive days since he started. His stall, # 101-A, was a good location. At first he took whatever stall was available. By January, 1989 he was assigned to # 101-A. The number he was assigned on the 1990 list placed him in an unprotected area. Anderson said he did not appeal because he was not permitted to contest the placement of other vendors. His tenure date was always correct; however, his place on the list changed because vendors were placed ahead of him.
Laquietta Parker, plaintiff, a vendor of handbags, claims her tenure began in 1987; however, she was listed in 1989 due to a 28 day lapse in June 1988 which she denied. Parker appealed but did not have documents to prove that there was no lapse. She stated the vendors did not save the receipts, were poor bookkeepers and had no prior notice that rental receipts or sales tax receipts would be required to prove tenure. She knew vendors who were improperly placed above her but the appeal process did not allow her to contest other assignments. Based on her 1987 date Parker would be assigned an uncovered stall. She stated that Ferdinand and Rosalind Garrison (French Market Corporation) knew that vendors were improperly placed ahead of her.
Douglas Hong, plaintiff, a seal skin vendor who claimed to have been a vendor since September 1983, was listed with tenure from 1987 and appealed. Hong testified that his wife developed leukemia and he had traveled to Virginia about one week out of every month. Hong stated that the French Market staff and other vendors knew he had been in the market since 1983.
Mehrunnisa Schermohmad, plaintiff, a vendor of costume jewelry allegedly since May 1987, was given a tenure date of October 1987. Her husband, who died, had tenure from May 1983, but she was denied her husband's date.

LAW AND ANALYSIS
The Louisiana Constitution requires that no person be deprived of life, liberty or property except by due process of law. La. Const. Art. I, Sec. 2. The U.S. Constitution's counterpart is in the Fourteenth Amendment. The initial requirement in any due process claim is that the claimant show the existence of some property or liberty interest which has been adversely affected by state action. Delta Bank & Trust Company v. Lassiter, 383 So.2d 330 (La.1980).
A due process analysis involves three questions:
1. whether the interest is protected by due process;
2. if the interest is so protected, whether due process requires some kind of hearing; and
3. if a hearing is required, what kind of hearing is mandated.
Paillot v. Wooton, 559 So.2d 758 (La.1990).
Any significant taking of property by the State is within the purview of the due process clause. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Even a temporary, nonfinal deprivation of property is sufficient. Sniadach v. Family Finance Corporation of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). An ongoing business or the right to engage in a lawful calling is a property right entitled to constitutional protection. Banjavich v. Louisiana Licensing Board for Marine Divers, 237 La. 467, 111 So.2d 505 (1959); Callais Cable *1352 Vision v. Houma Cable Vision, 451 So.2d 6 (La.App. 1st Cir.1984), writ denied 452 So.2d 1175 (La.1984).
State and federal due process require oral or written notice of evidence which supports the deprivation of an opportunity to present a contrary version. Paillot, 559 So.2d at 758. The right to notice and an opportunity to be heard must be granted in a meaningful way and at a meaningful time. Fuentes, 407 U.S. at 80, 92 S.Ct. at 1994.
The first issue is whether a vendor's right to a specific stall in the Flea Market is a property right. This Court has held that an association or corporation, such as the French Market Corporation handling a public or "quasi-public" market, is not permitted to eject a tenant without cause when rent is paid and no rule has been violated:
[I]n such quasi-public markets all must be treated equallyall must be given equal rightsand we cannot but feel that, to permit this Association to eject this tenant without assigning any cause, would give to it the right to deprive him [the vendor] of his property without due process of law....
New Prytania Market Association v. Beoubay, 185 So. 531, 536 (La.App. Orl.1939).
New Prytania Market found that the vendor's right to rent a stall was a property right sufficient to trigger due process considerations. Id. at 531. In the Flea Market the location of a stall is crucial to the quantity of sales. There is ample testimony from Ferdinand and the vendors to support the claim that assignment to section "A" has a monetary advantage. We conclude that denial of assignment to a particular stall, which has been a vendor's stall for years, is a property right with due process rights.
The next matter is whether the claimants were adversely affected. The threshold question as to the State's involvement was glossed over by the trial court and appellate briefs. The vendors' petitions said the French Market was a City agency or City-funded public benefit corporation. French Market's no cause of action exception alleged that it was a private nonprofit corporation.
According to the March 5, 1973 articles of incorporation, the Mayor of New Orleans organized The French Market Corporation as a nonprofit corporation in which no profits or distributions would be paid, distributed, or inure to the benefit of any shareholder, officer or member of the board of directors of the corporation under any circumstances. All "distributable net profits" derived from the operations of the corporation "shall be paid to the City of New Orleans, State of Louisiana, as a body public." The corporation was organized solely and exclusively to renovate and operate the French Market properties and similar ventures owned by the City of New Orleans. Article VII, Basis or Organization, provides:
There shall be but one share of no par value common stock issued by this Corporation which shall be owned by the Mayor of the City of New Orleans in his capacity as the Mayor of the City of New Orleans and his successors in office in their capacity as Mayor of the City of New Orleans.
Article X, Distribution of Assets on Dissolution, provided:
Should this Corporation ever be dissolved, or should its existence terminate, all the assets of the Corporation shall be turned over to the City of New Orleans.
We have carefully considered the market system of the City. The system contemplated public markets operated by the City and quasi-public markets, which were to be leased by the City to individuals or associations in accordance with rules and regulations adopted by the City. The City would give private operators of the markets authority to determine what tenants should occupy the stalls. Id. at 531.
The U.S. Supreme Court said it is impossible to formulate a test to determine whether the State has become significantly involved in private discrimination. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). The Supreme *1353 Court has held that the State is normally responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement that the choice must be deemed to be that of the State. West v. Atkins, 487 U.S. 42, 52, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40, 53 at fn. 10 (1988).
The broad test of State responsibility involves its participation through any arrangement, management, funds or property. "Only by shifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).
Whether a private nonprofit corporation should be considered public was discussed by the U.S. Fifth Circuit in Hines v. CENLA Community Action Committee Inc., 474 F.2d 1052 (5th Cir.1973). The Fifth Circuit noted that a private nonprofit corporation did not become public merely because the charity aspect of the corporation was public, or that the whole community may be the proper object of the good works of the corporation. The government must have the sole right, as trustee of the public interest, to regulate, control and direct the corporation and its funds. The corporation's whole interest must be the exclusive property and domain of the government. Id. at 1052.
Although French Market was incorporated as a private, nonprofit corporation, the City's total involvement is clear. The City owned the French Market and leased it to the French Market Corporation. According to its articles of incorporation French Market's profits are payable to the City. Its only share of stock belongs to the Mayor and all corporate assets upon dissolution go to the City. The contacts between the French Market Corporation and the City are clear in the articles of incorporation and in administration of the corporate activities. We conclude that French Market is sufficiently tied to the City to trigger the due process safeguards under the Louisiana and U.S. constitutions.
Because there was State involvement and the vendors' assignment of stalls was a property interest cognizable under due process law, this Court must consider whether the vendors received proper notice and a meaningful opportunity to be heard prior to the deprivation of their property rights.
According to Ferdinand, a vendor could submit evidence to change the tenure date; however, only rent and tax receipts were accepted and testimony or other documentation was not allowed. Vendors had no notice years ago that receipts would be the basis to prove tenure. Ferdinand said notice of the vendors' right to an appeal was never mailed to each vendor. The vendors were allowed to question their own tenure dates, but could not contest priority given to other vendors. The appeal process did not give the vendors an opportunity to be heard and was meaningless.
A vendor's right to continue business in the stall continuously occupied (many years in some cases) was violated by promulgation of the tenure lists. Reliance on rental and tax receipts which few vendors could produce (no prior notice to save them) created an inaccurate preference. Costa and Ferdinand conceded that the tenure list had serious flaws.
A vendor must be given timely notice and a meaningful hearing and appeal process before eviction or re-assignment. Any attempt to formulate a tenure list must include input from personnel of the French Market Corporation who have verifiable information.
The judgment which denied plaintiffs' preliminary and permanent injunctions against the French Market Corporation is reversed. The permanent injunction is granted pending formulation of a proper tenure list in accordance with the above.
JUDGMENT REVERSED; INJUNCTION GRANTED.
NOTES
[1] Robert Anderson filed one suit and Laquietta Parker, Douglas Hong and Mehrunnisa Schermohmad filed other suits.