# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2014

Lyle W. Cayce
Clerk

No. 13-31252

IRA PAUL BABIN, II; THOMAS G. RAY, JR.,

Plaintiffs - Appellants

v.

PAM BREAUX, Individually; SCOTT HUTCHESON, Individually; JAY DARDENNE, Lieutenant Governor of the State of Louisiana acting Secretary of the Louisiana Department of Culture, Recreation and Tourism; JAMES L. HUTCHINSON, Assistant Secretary of Tourism of the Department of Culture, Recreation and Tourism,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-368

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Appellants Ira Babin, II and Thomas Ray, Jr., former employees of the State of Louisiana who were laid off, appeal the district court's grant of summary judgment in favor of Appellees on their claims under 42 U.S.C. § 1983 for violation of Appellants' rights to procedural and substantive due

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31252

process under the United States and Louisiana Constitutions, and for violation of the contracts clauses of those constitutions. Appellant Ray appeals the district court's grant of summary judgment on his claim for unlawful retaliation for exercise of his constitutional rights in violation of 42 U.S.C. § 1983. All Appellants appeal the district court's ruling that Appellees are entitled to qualified immunity. For the following reasons, we AFFIRM the judgment of the district court.

## I.     Factual and Procedural History

Appellant Ira Babin, II was a classified civil service employee in the Marketing Division of the Louisiana Department of Culture, Recreation, and Tourism's Office of Tourism. He served as the Director of Marketing for that office.

Appellant Thomas G. Ray, Jr. was also a classified civil service employee in the Louisiana State Department of Culture, Recreation, and Tourism, though he served in the Office of Cultural Development. His position was "Cultural Program Analyst 2."

Both Babin and Ray were laid off from their positions on June 28, 2009. As the events leading up to their layoffs differ, we treat Babin and Ray separately.

## A.     Ira Babin

The layoffs in the Marketing Division of the Office of Tourism originated in mid- to late-2008. In July 2008, then-Lieutenant Governor Mitch Landrieu appointed Defendant-Appellee Pam Breaux Secretary of the Department of Culture, Recreation, and Tourism.[1] From the start of Breaux's tenure, Landrieu expressed concerns about the organization and efficiency of the

---

[1] Throughout Breaux's tenure, there was no Assistant Secretary for the Office of Tourism within the Department of Culture, Recreation, and Tourism. As the secretary of the department, Breaux therefore was also ultimately in charge of managing that office.

No. 13-31252

Marketing Division of the Office of Tourism.  Landrieu charged Breaux, as the new head of the department, with evaluating the department's structure and reporting back to him with a plan for a reorganization of the Office of Tourism.

Thereafter, Breaux developed just such a plan, which involved substantial layoffs in the Marketing Division.  Breaux consulted with the Louisiana Department of State Civil Service in formulating the reorganization and layoff plan in order to be sure that it complied with all Louisiana Civil Service Rules ("Civil Service Rules").  On May 26, 2009, Breaux submitted the proposed reorganization and layoff plan ("Tourism Layoff Plan") to the Department of State Civil Service.

The next day, May 27, 2009, Breaux told Babin that he would be laid off. Babin was given a copy of the Tourism Layoff Plan and a Notification of Impending Layoff.

The Tourism Layoff Plan contained several paragraphs explaining the rationale behind the proposed layoffs and reorganization, including specific information about the purpose and nature of the restructuring.  For example, the plan states that "deeper tourism research is sorely needed. . . .  For this reason, it is important for the State to supply this level of research."  Later, the plan explains "that agency efforts need to be redirected largely away from sales missions" towards other areas.  The plan also speaks specifically to marketing jobs—Babin's area—stating, among other things: "Marketing series and public information series job fields will be abolished . . . .  because we will no longer need Office of Tourism staff to mostly perform marketing . . . .  Instead . . . the new structure will require agency staff to manage sponsorships, contracts and partnerships."

The accompanying notification stated that comments on the Tourism Layoff Plan could be made in writing to Breaux, the head of the department,

3

No. 13-31252

Jan Ramezan, the Director of Human Resources ("HR"); and to Shannon Templet, the Director of the Department of State Civil Service.[2]

Babin took advantage of that offer and met with Breaux to discuss the proposed layoffs on May 29, 2009, though he submitted no written comments.

On June 3, 2009, Breaux appeared before the Civil Service Commission at their general business session to address the proposed layoffs. Babin was also present, and his attorney appeared before the Commission on his behalf to protest the Tourism Layoff Plan. That same day, the Tourism Layoff Plan was approved by the Department of State Civil Service, and Templet, the director of that department, authorized Breaux to go forward with the Tourism Layoff Plan.

Babin was laid off on June 28, 2009.

## B.     Thomas Ray

Meanwhile, budget cuts were forcing a reorganization within another office in the Department of Culture, Recreation, and Tourism—the Office of Cultural Development. In July 2008, Landrieu appointed Scott Hutcheson Assistant Secretary for the Office of Cultural Development. Hutcheson was informed that the budget for the office was being slashed, and the number of positions within the office had to be cut down from 49 to 31 for the next fiscal year.

In response to those budget cuts, Hutcheson formed a layoff plan for the Office of Cultural Development ("Cultural Development Layoff Plan"). The Cultural Development Layoff Plan proposed abolishing several positions,

---

[2] Specifically, the notification provided: "This plan is being submitted to the Director of the State Civil Service and must be approved by the Director before layoff actions can be taken. Any comments regarding the layoff may be made in writing to me, Pam Breaux, or Jan Ramezan, Human Resources Director. You may also address your comments to Ms. Shannon Templet . . . . You are urged to provide any responses you may have to one or both of the above-stated persons within five (5) days of receipt of this notice."

including Ray's.  Hutcheson sent the Cultural Development Layoff Plan to Templet at the Department of State Civil Service on May 20, 2009.

On May 27, 2009, Hutcheson, Ramezan, and Desiree Honore, Undersecretary of the Department of Culture, Recreation, and Tourism met with the Office of Cultural Development employees who would be laid off.  It was a group meeting, and Ray attended.  Hutcheson explained the reason for the layoff—the budget cuts—and provided the employees with a packet of layoff material.  That packet included a layoff notice and the Cultural Development Layoff Plan.  Ray's layoff notice informed him that he could comment on the Cultural Development Layoff Plan in writing, stating "[a]ny comments regarding the layoff may be made in writing to myself Scott Hutcheson or Jan Ramezan, Human Resources Director.  You may also address your comments to Ms. Shannon Templet . . . .  You are urged to provide any responses you may have to one or both of the above-stated persons within five (5) days of receipt of this notice."  Hutcheson also informed the employees of their right to respond and comment on the Cultural Development Layoff Plan to him, Ramezan, and Templet at that meeting.

Ray neither sent comments to Hutcheson, Ramezan, or Templet in writing, nor did he attempt to meet with any of them in person to comment on the proposed layoffs.  Ray also did not attend the Civil Service Commission meeting about the proposed layoffs that Babin attended on June 3.

The Civil Service Commission approved the Cultural Development Layoff Plan on June 3, 2009, and Ray's last day of work was June 28, 2009.

Prior to the budget cuts and subsequent layoffs, a situation occurred within the Office of Cultural Development that forms the basis for Ray's retaliation claim.  Ray alleged that another employee within the department, Kathleen Pheney, was abusing the payroll system by being paid for days she did not work.  His initial complaint was made in February 2007, and the

investigation lasted until January 2008. At that point, HR was unable to prove the accusations against Pheney, and Ray claims that he was targeted by Breaux, allegedly a friend of Pheney's, and others within the Office of Cultural Development.

After Hutcheson became Assistant Secretary in July 2008, Ray was investigated for improper computer usage and Hutcheson issued him a reprimand. Ray alleges he was investigated as retribution for having reported Pheney. Ray also claims that he was laid off in retaliation for reporting Pheney. Pheney was also laid off on June 28, 2009.

### C.    Procedural Background

After they were laid off, Babin and Ray filed suit under 42 U.S.C. § 1983 alleging violation of their right to procedural and substantive due process under the United States Constitution, U.S. Const. amend. XIV, and the Louisiana Constitution, La. Const. art. I, § 2. Babin and Ray also claimed that their termination violated the Contracts Clause of the United States Constitution, U.S. Const. art. I, § 10, and the Louisiana Constitution, La. Const. art. I, § 23. Lastly, Ray alleged that his termination was unlawful retaliation under 42 U.S.C. § 1983, because it violated his right to freedom of expression under the First and Fourteenth Amendments to the United States Constitution and under the Louisiana Constitution.

The district court granted Appellees' motion for summary judgment as to all of Babin's and Ray's claims. The district court held that Babin's and Ray's procedural due process rights were not violated, as they had received adequate notice and an opportunity to be heard. Additionally, the district court held that there was no substantive due process violation, as the layoffs were not arbitrary and capricious. As to the claims under the contracts clauses, the district court held that because Babin and Ray had no "bumping rights," there was no violation of the contracts clauses. Lastly, the district court held that

there was no genuine issue of material fact on Ray's retaliation cause of action as there was no evidence that Hutcheson knew Ray had engaged in a protected activity.  Babin and Ray then took this appeal.

## II.    Procedural Due Process

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court.  *Johnson v. City of Shelby, Miss.*, 743 F.3d 59, 61 (5th Cir. 2013).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute of fact is genuine if it may "reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[3]  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  The type of notice and hearing required—that is, what process is due—depends on the context of the individual case.  Due process, "'unlike some legal rules, is not a technical conception with a fixed content unrelated to time,

---

[3] We assume, without deciding, that the procedural due process analyses under the Louisiana Constitution and the United States Constitution are the same.  Appellants do not differentiate the claims in their briefs, and they do not elucidate any relevant divergences in the analyses.  Additionally, the Louisiana cases they cite apply federal case law in deciding Louisiana procedural due process claims and do not differentiate the analyses.  *See Bell v. Dep't of Health & Human Res.*, 483 So. 2d 945, 949–51 (La. 1986); *In re Adoption of B.G.S.*, 556 So. 2d 545, 552–54 (La. 1990); *Wilson v. City of New Orleans*, 479 So. 2d 891, 894–97, 899–901 (La. 1985); *Paillot v. Wooton*, 559 So. 2d 758, 760–63 (La. 1990); *Fields v. Louisiana ex rel. Dep't of Pub. Safety & Corr.*, 714 So. 2d 1244, 1250–61 (La. 1998); *Louisiana State Bar Ass'n v. Ehmig*, 277 So. 2d 137, 139–40 (La. 1973).  Appellants also cited Article 10, Section 8(A) of the Louisiana Constitution as supporting their procedural due process claims.  That provision applies to disciplinary actions and is therefore inapplicable here.  *See* La. Const. art. 10, § 8(A).

No. 13-31252

place and circumstances.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).  Rather, it "'is flexible and calls for such procedural protections as the particular situation demands.'"  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  As such, the determination of "what process is due" requires an analysis of the interests at stake in a given case.  *See id.* at 334–35.

*Mathews* instructs that there are three distinct interests to be considered: (1) the private interest affected; (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

Here, the private interest affected was significant—Babin and Ray both lost their jobs.  Nonetheless, while perhaps nothing can mitigate the profound disruption that being laid off may well have wrought, the district court rightly noted that "the deprivation suffered by employees because of a layoff required for financial reasons is not accompanied by the same stigma as an employee terminated for cause."

The second factor—the risk of an erroneous deprivation of such interest—is low in this case.  The process here was long and involved multiple different offices within the state government.  Breaux formulated the Tourism Layoff Plan over a period of several months and in conversation with the Lieutenant Governor's Office.  Hutcheson similarly formed the Cultural Development Layoff Plan through meetings and conversations with the undersecretary of the department.  HR was also involved in forming both layoff plans.  Both plans were submitted to the Department of State Civil Service to ensure that they complied with the Civil Service Rules.  The Department of

## No. 13-31252

State Civil Service then had an open general business meeting where at least the Tourism Layoff Plan was discussed and debated. Finally, the affected employees themselves had an opportunity to weigh in. Each affected employee was provided with a layoff notification that informed him that written comments could be made to Breaux (or Hutcheson), Ramezan, or Templet and should be given within five days. Employees were also given a copy of the relevant layoff plans, all in accordance with the Civil Service Rules. *See* La. Civ. Serv. R. 17.10.[4] After receiving the notice and layoff plan, employees were able to—and Babin did—respond to the layoff plans to the department and office heads responsible for making the layoff decisions. After the layoffs, employees were entitled to appeal their layoffs through the Department of State Civil Service.

The third factor is the government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Here, those burdens would be prodigious, especially considering that the layoffs at issue were, at least in the Office of Cultural Development, precipitated by severe budgetary constraints, and in light of the significant process already afforded to Babin and Ray by the Civil Service Rules. Requiring that, in a layoff situation, each

---

[4] The provision, at the time of the events at issue, read:

(a) For layoffs involving permanent employees, the following notices are required:

1. The appointing authority shall, as soon as it is reasonably determined that a layoff will be necessary, make a reasonable attempt to notify all employees who could be affected.
2. Once a layoff plan is approved by the Director, it shall be made generally available to the employees who could be affected.
3. Employees in positions proposed for abolishment shall be so notified at least five (5) calendar days prior to approval of the plan by the Director.
4. Employees shall be notified of displacement offers, or layoff notification if there is no offer to make. There shall be at least five (5) calendar days between the last such notice and the effective date of layoff.

La. Civ. Serv. R. 17.10 (prior to June 3, 2009).

laid off employee be afforded an opportunity to meet with the final decision maker and dispute his selection for the layoff, the policies underlying the layoff, and the evidence and research underlying those policies, would be burdensome in the extreme, and it is difficult to see here what additional value such a meeting would bring.

As such, the district court correctly concluded that Babin and Ray were afforded all the process they were due under *Mathews*. The core procedural due process requirements are notice and an opportunity to be heard, *Loudermill*, 470 U.S. at 542, and both were provided here.

Babin was provided with a layoff notification and a copy of the Tourism Layoff Plan. The Tourism Layoff Plan provided him with information about the reasons underlying the reorganization and the layoffs. The information was sufficient to provide him with a "meaningful opportunity to present [his] case." *Mathews*, 424 U.S. at 349.

Similarly, Ray was provided with a layoff notification and a copy of the Cultural Development Layoff Plan. Both of those documents explained that the layoffs were necessitated by budget concerns, satisfying the due process requirement of notice. *See Russell v. Harrison*, 736 F.2d 283, 289–90 (5th Cir. 1984) ("The letters stated that the reason for termination was the financial emergency found to exist by the Board of Trustees. . . . We concur in the district court's conclusion that the due process requirement of notice was satisfied."). Ray heard Hutcheson explain the necessity of the layoffs again at the group meeting on May 27, 2009.

Both were also afforded the opportunity for a hearing, though only Babin took advantage of it. Babin's layoff notification expressly told him he could present written comments about the layoffs to Breaux, Ramezan, and Templet. While Babin did not submit comments in writing, Breaux personally invited Babin to meet with her to discuss the proposed layoffs, which he did on May

29, 2009.  Babin's counsel also objected to the layoff plan at the Department of State Civil Service's general business meeting on June 3, 2009.  Counsel for Appellants asserts that this was not a sufficient hearing because the Civil Service Commission was looking solely at whether the layoff plan comported with Civil Service Rules.  Appellants' counsel asserts that what due process required was an opportunity to meet with the ultimate decision maker.  But, assuming that is what is required, that is *exactly the opportunity Babin took advantage of*.  Babin met with Pam Breaux, who was the architect of the entire reorganization and layoff scheme.  In his deposition, Babin states that he even expressed concern over the special exception granted Nancy Broussard in the Tourism Layoff Plan, indicating that he had read that document at the time he met with Breaux.  If he disagreed with the goals of her reorganization, if he thought he would be able to contribute meaningfully to the reorganized department, or if he thought the entire reorganization was misguided, he had the opportunity to express that to the ultimate decision maker.  *See Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*,  946 F.2d 379, 388 (5th Cir. 1991) ("The 'hearing' offered need only be an opportunity for the aggrieved faculty member to meet with the ultimate decision maker, to present his or her case orally, and to explore with the decision maker the possible alternatives to termination."); *Brown v. Tex. A&M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) ("Had he chosen to do so, Brown could have, and in some cases may have, contested both the University's charges and its contemplated action on myriad occasions. Although informal in nature, these meetings presented Brown with more than adequate opportunity to have his case heard, and thus were sufficient to satisfy constitutional minima.").  Moreover, Babin had the right to appeal his layoff through the Civil Service system, a right of which he did not take advantage.  Due process may require less; it certainly requires no more.

Similarly, Ray was told in the layoff notification that he could present any comments in writing to Scott Hutcheson, who, as Assistant Secretary, was the ultimate decision maker for the Office of Cultural Development.  If there was any ambiguity, Hutcheson also told Ray and the other employees at the meeting on May 27, 2009, that they had a right to respond and comment upon the Cultural Development Layoff Plan to him, Ramezan, and Templet.  *See Tex. Faculty Ass'n*, 946 F.2d at 388 ("[T]he procedure UTD employed might have been very simple indeed.  Initially, the administration probably need only consider, in good faith, a written submission from each affected faculty member setting out why he or she deserves to be retained.  Only if a particular faculty member makes a colorable showing that, under the objective criteria the university employs, he or she deserves to be retained in another academic program, must any sort of 'hearing' be offered.").  That Ray did not see fit to take advantage of these opportunities does not negate the fact that a hearing was available to him.  *Cf. id.* at 389 ("Only where 'faculty members *know* that the opportunity for an adequate hearing is available and *choose* to forgo that opportunity, do they act at their peril.") (quoting *Russell v. Harrison*, 632 F. Supp. 1436, 1442 (N.D. Miss. 1986)) (brackets removed).  Ray also declined to appeal his layoff through the Civil Service system.

We also note that we need not decide how high up in the department the administrator before whom the employee had the opportunity to be heard must be.  Rather, we hold that the opportunity for a hearing before the department executive in charge of designing and implementing the layoff policy, which was provided here, is at least sufficient to meet constitutional minima.

No. 13-31252

## III.  Substantive Due Process

Summary judgment was also appropriate on Appellants' substantive due process claims.[5]  In order to succeed on a claim for violation of substantive due process "in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993); *cf. County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("We have emphasized time and again that 'the touchstone of due process is protection of the individual against arbitrary action of government.'" (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))).  Substantive due process is satisfied if the employer acted with a specific exercise of professional judgment in a non-arbitrary and non-capricious manner.  *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992) ("The only substantive process due Spuler, assuming he had a property interest, was the exercise of professional judgment, in a non-arbitrary and non-capricious fashion."); *Texas ex rel. Bd. of Regents of the Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998) (holding that substantive due process is not violated unless the court can say the official's determinations "so lacked a basis in fact that their decision . . . was arbitrary, capricious, or taken without professional judgment").

Here, there can be no successful contention that the official action violated Babin's and Ray's substantive due process rights.  The Tourism Layoff Plan was formulated over a period of almost ten months and involved evaluation, discussion, and analysis among Breaux (the Secretary of the

---

[5] Appellants failed to cite a single authority in support of their substantive due process claim under the Louisiana Constitution; accordingly, we affirm summary judgment.  *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it.") (internal quotation marks omitted).

Department of Culture, Recreation, and Tourism), Landrieu (the Lieutenant Governor), HR, the Department of State Civil Service, the Assistant Secretaries within the Department of Culture, Recreation, and Tourism, and Honore, the undersecretary of the department.

Similarly, the Cultural Development Layoff Plan was developed by Hutcheson in cooperation with Human Resources, Civil Service, and the undersecretary of the department, in response to a significant budget cut.

Nevertheless, Appellants put forward three arguments that the layoffs were arbitrary, capricious, or made without professional judgment.  First, Appellants argue that there were no uniform, objective criteria for the layoffs. Yet, Appellants have failed to put forward any evidence suggesting that was the case.  Given the extensive deliberation and analysis afforded the layoff decisions, Appellants have failed to raise a genuine issue of material fact that the layoff decisions were not the result of "an exercise of professional judgment in a non-arbitrary and non-capricious manner." *See Spuler*, 958 F.2d at 107.

Second, Appellants argue that Babin's and Ray's substantive due process rights were violated because they were not afforded a post-deprivation hearing. The only case they cite to support this argument, *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir. 1987), is wholly distinguishable.  *Schaper* noted a line of Supreme Court cases holding that where a post-deprivation hearing could fully redress a constitutional injury caused by a "random and unauthorized" official act, procedural due process was not violated.  *Id.* at 717.  The court therefore held that it would be inconsistent with that doctrine to allow recovery for the same "random and unauthorized" official act on substantive due process grounds on the basis that the official's action was arbitrary and capricious.  *Id.* at 718.  Essentially, then, *Schaper* set a *higher* bar for substantive due process violations in certain situations, holding that even when an official acted in an arbitrary and capricious manner, a plaintiff cannot recover if there is an

adequate state-law post-deprivation remedy. *Id.* Appellants' argument fails because they cite no authority for their broad assertion that actually supports it. *Scroggins*, 599 F.3d at 446 ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it.") (internal quotation marks omitted).

Third, Babin argues that the hiring of Mindy Velasquez to a newly created position in the Office of Tourism was arbitrary and capricious. Babin argues that he is objectively more qualified for the new position than Velasquez, and that Velasquez's appointment was motivated by a recommendation from a donor to Landrieu's campaign. Babin's arguments have no bearing, however, on his substantive due process claim. The fact that Babin was not hired for a new position within the department is irrelevant to determining whether his layoff was arbitrary and capricious.

## IV.    The Contracts Clauses

Appellants assert additional claims under the Contracts Clauses of the United States and Louisiana Constitutions. U.S. Const. art. I, §10; La. Const. art. I, § 23. Contracts Clause claims are analyzed using a three-step analysis: (1) the state law must have substantially impaired a contractual relationship; (2) the state's asserted justification for the impairment must serve a significant and legitimate public purpose; and (3) the challenged law must be reasonably necessary to achieve the public purpose. *United Healthcare Ins. Co. v. Davis*, 602 F.3d 618, 627 (5th Cir. 2010).[6]

Implicit in the first step is a requirement that the plaintiff actually identify a provision of his contract that has been impaired. Appellants here

---

[6] The analysis under the contracts clause of the Louisiana Constitution is identical for all intents and purposes. *See Louisiana v. All Prop. & Cas. Ins. Carriers Authorized & Licensed to Do Bus. in the State of La.*, 937 So. 2d 313, 324 (La. 2006).

have done no such thing.[7]  Appellants' brief points out that the Civil Service Rules "become a part of Plaintiffs' employment agreements and were incorporated therein, as though expressly forming a part of the Plaintiffs' employment agreements."  Even assuming *arguendo* that is true, they point to no entitlement in the Civil Service Rules that was later impaired by the State. In fact, the Civil Service Rules expressly provided for the possibility of layoffs. *See* La. Civ. Serv. R. ch. 17 ("Layoff Avoidance Measures, Layoffs, and Post Layoff").  Further, counsel for Appellants stated at oral argument that Babin's and Ray's layoffs complied with the Civil Service Rules.

Appellants' brief also generally avers that "the job security rights of permanent classified state employees are not only property rights protected by the Due Process Clauses . . . they are also contract rights which are protected by the Contracts Clauses."  They also state that "it cannot be persuasively argued that the Defendants' evisceration of the Plaintiff's property and contract rights is permissible, notwithstanding the protections of the Contracts Clauses."  If we give Appellants the benefit of the doubt and assume *arguendo* that their broad assertions have merit, those assertions fail to identify any specific contractual expectation of which they were denied.  The most specific allegation is found in their reply brief, arguing that "Civil Service merely changed the titles of the position and that the functions continued to exist and were performed by private contractors."  But that argument again fails to identify a specific contractual provision (or Civil Service Rule allegedly incorporated into the contract) that Appellants claim was substantially impaired.

---

[7] While the contracts clause argument in Appellants' complaint appears to have been premised on their having had "bumping rights," Appellants have unequivocally waived that argument in their reply brief.

No. 13-31252

As such, the grant of summary judgment on the contracts clause claims was not in error.

## V.     Retaliation

Ray also contends that he was laid off in retaliation for reporting potential payroll abuse by Pheney.[8]  In order to prove a claim of retaliation in violation of the First Amendment under 42 U.S.C. § 1983, a plaintiff must show: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc); *accord Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).  If the plaintiff makes such a showing, the employer may still avoid liability if it can "show[] by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *accord Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

The district court granted summary judgment on the basis that there was no genuine dispute of material fact that Ray's complaints about Pheney were a motivating factor in Hutcheson's layoff decision.  The court noted that there was no evidence in the record that Hutcheson was aware that Ray had made the complaint about Pheney, and, in his affidavit, Hutcheson denied having such knowledge at the time he made the layoff decision.

On appeal, Ray argues that his deposition testimony that Hutcheson discussed issues with Pheney's attendance in meetings shows that Hutcheson

---

[8] Appellants do not mention their Louisiana state law claim as to retaliation in their brief.  Accordingly, it is waived.  *Scroggins*, 599 F.3d at 446.

17

was aware of Ray's complaints about Pheney. That conclusion simply does not follow. Ray's deposition testimony indicates only that Hutcheson was aware of incidents where Pheney was not at meetings and events she was supposed to attend *after* Hutcheson became director. There is no evidence that Hutcheson was aware of the earlier investigation or, most essentially, that Ray was the one who initiated the complaints leading to that investigation. Further, neither the computer violation nor the fact that Ray continued passing information on Pheney to the internal auditor well after the investigation had closed shows that Hutcheson knew Ray was the one who had reported Pheney. That knowledge is key to establishing that Ray's complaints were a motivating factor in Hutcheson's decision to lay him off. Having adduced no such evidence, there is no genuine dispute of material fact on the motivating factor element, and the district court did not err in granting summary judgment.

## VI.   Qualified Immunity

Having determined that there was no violation of Babin's or Ray's constitutional rights, we need not reach the issue of qualified immunity.

## VII.   Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.