967 So.2d 606 (2007)
Rashi REED
v.
DEPARTMENT OF POLICE.
Donna Aubert
v.
Department of Police.
Shyra Allen
v.
Department of Police.
Willie Lee
v.
Department of Police.
Ronald Moore
v.
Department of Police.
Eric Doucette
v.
Department of Police.
Carl Davis
v.
Department of Police.
Shawn Madison
v.
Department of Police.
Rhonda Hill
v.
Department of Police.
Kermit Henry
v.
Department of Police.
Errol Washington
v.
Department of Police.
Leander Winford
v.
Department of Police.
Nos. 2006-CA-1498, 2006-CA-1500, 2006-CA-1647, 2007-CA-0171, 2007-CA-0360, 2007-CA-0361, 2007-CA-0364, 2007-CA-0366, 2007-CA-0367, 2007-CA-0368, 2007-CA-0796, 2007-CA-0797.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 2007.
Rehearing Denied November 15, 2007.
*607 Gary M. Pendergast, Gary M. Pendergast, L.L.C., New Orleans, LA, for Rashi Reed, Eric Doucette and Rhonda Hill.
Cheryl Mitchel Gaines, Silver Spring, MD, for Donna Aubert.
Kenneth M. Plaisance, New Orleans, LA, for Shyra Allen and Willie Lee.
Frank G. DeSalvo, DeSalvo DeSalvo & Blackburn, APLC, New Orleans, LA, for Ronald Moore.
Rowena T. Jones, New Orleans Legal Assistance Corporation, New Orleans, LA, for Shawn A. Madison.
James E. Stovall, Covington, LA, for Leander Winford.
James B. Mullaly, Assistant City Attorney, Penya Moses-Fields, City Attorney, Heather M. Valliant, Assistant City Attorney, Joseph V. Dirosa, Jr., Chief Deputy City Attorney, Victor L. Papai, Jr., Assistant City Attorney, New Orleans, LA, for Defendant/Appellant.
Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME.
MAX N. TOBIAS, JR., Judge.
We consolidated these matters solely to consider the common issue of whether the *608 New Orleans Civil Service Commission ("CSC") erred as a matter of law by holding that because the New Orleans Police Department ("NOPD") did not hold pre-termination hearings pursuant to CSC Rule IX, § 1.2, the discipline imposed against the plaintiffs/appellees, all NOPD officers, was illegal.[1] For the reasons that follow, we hold that Hurricane Katrina, with its effects upon the city of New Orleans and its government, was an extraordinary event such that the NOPD could discipline the officers without a pre-termination hearing. We further hold that, under these unique circumstances, a post-termination hearing, which allows the accused officer an opportunity to present all relevant evidence he/she would have introduced at a pre-termination hearing to overturn the NOPD's decision, satisfies the due process requirements of both the United States and Louisiana Constitutions.[2]
The only issue before us is whether these officers were denied due process for the NOPD's failure to grant them a pre-termination hearing. In Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), the United States Supreme Court stated:
An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." FN7 Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); see Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570. As we pointed out last Term, this rule has been settled for some time now. Davis v. Scherer, 468 U.S. 183, 192, n. 10, 104 S.Ct. 3012, 3018, n. 10, 82 L.Ed.2d 139 (1984); id., at 200-203, 104 S.Ct. 3022-3024 (BRENNAN, J., concurring in part and dissenting in part). Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond. For example, in Arnett six Justices *609 found constitutional minima satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits. See also Barry v. Barchi, 443 U.S. 55, 65, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979)(no due process violation where horse trainer whose license was suspended "was given more than one opportunity to present his side of the story"). [Emphasis added.]
In footnote seven referenced above, the Court recognized an exception:
There are, of course, some situations in which a postdeprivation [sic] hearing will satisfy due process requirements. See Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908). [Emphasis added.]
In Bell v. Dep't of Health and Human Res., 483 So.2d 945 (La.), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986), the Louisiana Supreme Court stated:
The provisions of the state constitution involving the Civil Service, Article X, § 1 et seq., and the Rules of the Commission are designed to secure adequate protection to the public career employee from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the Civil Service Rules is to guarantee the security and welfare of the public service. Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980) (emphasis added). With this in mind, it is clear that tenure or classified civil service status is a property right within the meaning of Article I, § 2 of our constitution, a prerequisite to a due process challenge. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980). Under our constitution and the Civil Service Rules, an employee who has gained classified permanent civil service status has an entitlement to his position, since he has already received the position, and applicable law guarantees him continued employment, save for some exceptions (i.e. disciplinary sanctions for cause). Cleveland Bd. of Educ. v. Loudermill, supra; Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Having concluded that a classified permanent employee enjoys a property right in maintaining his status, it is axiomatic that his position may not be changed or abolished without due process of law. Cleveland Bd. of Educ., supra. The question becomes what process is due.
The decisions of the United States Supreme Court, as well as the jurisprudence of this state, underscore the truism that "`[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It is particularly flexible in the area of administrative law. See Smith v. Division of Admin., 415 So.2d 381 (La. App. 1st Cir.1982); Hamilton v. La. Health & Human Resources Admin., 341 So.2d 1190 (La.App. 1st Cir.1976), writ refused, 344 So.2d 4 (La.1977). Where the power of the government or *610 an agency is to be used against an individual there is a right to a fair procedure to determine the basis for, and the legality of, such action. Nowak, J., et al., Handbook on Constitutional Law, Ch. 15, p. 477 (1978).
Id. at 949-50. [Underlined emphasis added.]
In Fields v. State Through Dept. of Public Safety and Corrections, 98-0611, pp. 7-8 (La.7/8/98), 714 So.2d 1244, 1251, the Supreme Court clarified its position:
Generally, before a person is deprived of a protected interest, he must be afforded some kind of hearing. However, this court has often recognized there may be circumstances involving a valid governmental interest which justify postponing the hearing until after the event. In re Adoption of B.G.S., 556 So.2d 545, 553 (La.1990). A deprivation without opportunity for a prior hearing or other effective substitute safeguard has been allowed in "extraordinary" or "truly unusual" situations. Paillot v. Wooton, 559 So.2d 758, 762 (La.1990). "[E]mergency action may be proper pending a hearing when matters of public health and safety are involved." Id. See also Wilson v. City of New Orleans, 479 So.2d 891 (La.1985) and Bell v. Department of Health and Human Resources, 483 So.2d 945, 951(La.), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986) ("[W]e note that there seems to be an emerging concept that in some instances due process is fulfilled by a `post deprivation' hearing. We believe that this view to procedural due process in certain situations is sound and is in support of our decision here.").
Id. [Emphasis added.]
It is unnecessary for this court to describe the emergency conditions existing in New Orleans during and after Hurricane Katrina. Thus, we note the obvious negative effect that an absence of discipline for these officers would have on those who remained at their posts under the most unusual and trying of circumstances. In Stevens v. Department of Police, 00-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627, we stated:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman, supra [v. Department of Fire, 425 So.2d 753 (La.1983)]. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
We can hardly envision a scenario when enforcing appropriate standards of conduct was ever more important than in the aftermath of Hurricane Katrina. In addition, we find that the CSC's rulings relying solely on the absence of a pre-termination hearing when truly extraordinary circumstances present themselves would set a dangerous precedent on future disciplinary actions of the NOPD.
For the foregoing reasons, we find that the CSC erred in reversing the orders of discipline against the plaintiffs/appellees on the sole basis that no pre-termination hearings were afforded to them.
We therefore vacate the decisions of the CSC in each of these consolidated cases. We remand the cases to the CSC for them to receive from the parties such additional evidence as necessary to appropriately resolve each of the cases and to render a judgment on the merits of each case. In that regard, the CSC is specifically instructed to permit each of the plaintiffs/appellees *611 to introduce at the post-termination hearing such additional evidence as he or she might have provided to the appointing authority at a pre-termination hearing if same had been afforded. The right of each party to appeal a new subsequent judgment of the CSC following its ruling on the merits of each case is preserved.
JUDGMENTS VACATED; REMANDED WITH INSTRUCTIONS.
CANNIZZARO, J., Concurs with Reasons.
BAGNERIS, J., Dissents for the Reasons Assigned by Judge LOMBARD.
LOVE, J., Dissents.
LOMBARD, J., Dissents.
BELSOME, J., Dissents with Reasons.
CANNIZZARO, J., Concurs with Reasons.
I concur in the result reached by the majority in that the New Orleans Civil Service Commission erred as a matter of law under the extraordinary circumstances of this case by requiring that the N.O.P.D. conduct a pre-termination hearing prior to disciplining the officers.
However, I would pretermit any and all discussion with regard to the remaining assignments of error since they are not germane to the issue of a pre-termination hearing.
Furthermore, the record does not reflect nor should we speculate as to the impact or effect of the discipline (or lack thereof) on other members of the N.O.P.D.
LOVE, J., Dissents.
I respectfully dissent for the reasons assigned by Judge Lombard.
LOMBARD, J., Dissents.
"The Constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his [property rights]." Wilson v. City of New Orleans, 479 So.2d 891, 894 (La.1985). It is undisputed that, historically, due process has been a fundamental precept of our legal system, see Baldwin v. Hale, 1 Wall. 223, 17 L.Ed. 531 (1864), or that the right to notice and an opportunity to be heard must be granted at "a meaningful time and in a meaningful manner." Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).[1]
During and immediately after Hurricane Katrina swept through New Orleans on August 29, 2005, some police officers were absent from their posts. Nearly two months later, on October 24, 2005, letters were mailed to this group of officers, terminating them without any notice or opportunity to be heard, even thoughas in the case of Officer Reedmany had contacted their supervisors in the days immediately following the hurricane, were advised of a 30-day suspension, returned to New Orleans and were in contact with their immediate supervisors regarding reporting to duty at the end of the suspension period. In sanctioning the City's illegal termination of the officers nearly two *612 months after Hurricane Katrina[2], the majority ignores the clear-cut procedural due process requirements of the federal and state constitutions[3], as well as the Rules of the New Orleans Civil Service Commission, and creates a dangerous new precedent.
Even in extraordinary circumstances, an individual whose interests may be affected by a deprivation of life, liberty, or property must be granted a fair procedure before a fair decision maker.[4] In some circumstances, due process may not require a full-blown, trial-type hearing, but that is not to say that some sort of rudimentary precautions afforded by an informal notice and opportunity to respond are not necessary.[5] Due process is a flexible standard, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and courts have been flexible in finding that a meaningful and prompt post-deprivation process will suffice where prior notice and opportunity to be heard is not a meaningful protection.[6] Significantly, however, no other *613 court has ever sanctioned a permanent deprivation/termination of employment implemented without pre-deprivation/pre-termination of employment notice and hearing.[7]
While it may be emotionally satisfying or politically expedient to circumscribe the rights of a police officer accused of deserting his post in the midst of a community disaster, to do so in this case sets a dangerous precedent, curtailing important constitutional protections and overriding the long-held bright-line rule that a permanent deprivation requires pre-deprivation due process. Even accepting arguendo that Hurricane Katrina was an extraordinary event allowing for the temporary curtailment of constitutional protections, these terminations took place nearly two months after that event.
The majority asserts, however, that the violation of the constitutional rights of these police officers should be sanctioned because "an absence of discipline" will result in an "obvious negative effect" on other officers who remained at their posts during the chaos and disorder following the levee breach.[8] To mischaracterize procedural due process prior to termination as an "absence of discipline" implies that police officers, alone of civil service employees, are not entitled to procedural due process. It is difficult to conceive that adopting this implicationthat police officers are not entitled to the same constitutional and statutory protections as other similarly situated persons[9]will bolster the morale of the police department or validate the decisions of the police officers who reached their designated duty posts and remained throughout the storm's aftermath. The police department may be a de facto "quasi-military" institution but police officers are classified as civil servants under the law and, until that classification is changed, are entitled to all of the protections (including procedural due process) afforded civil service employees.[10]
Likewise, it is specious to say that due process will be satisfied by allowing the *614 "accused officers" to supplement the record "with all relevant evidence he/she would have introduced at a pre-termination hearing to overturn the NOPD's decision." (Emphasis added) The purpose of the right to be heard is to minimize the likelihood of a substantially unfair or mistaken deprivation. Thus, the intimation that a termination decision is pre-determined before the hearing, subordinating the hearing itself to an appeal of that decision, suggests a departure from the basic standards of due process.
Finally, the termination letter sent by the City, citing a civil service rule as the sole basis for dismissal is contrary to the clear language of Civil Service Rule IX and thus, as observed by the Commission, the officers have yet to be charged with a violation of an internal police department rule.[11] Presumably, the police department's internal rules address the officers' actions in these cases and, as the issue before the court is whether the officers were afforded their constitutional and statutory rights to notice and opportunity to be heard, not whether the officers' actions should ultimately serve as a basis for their termination, I disagree with the conclusion that the NOPD's failure to site a specific internal rule "is without moment."
Major disasters do not permit the curtailment of constitutional protections. Accordingly, I would affirm the Civil Service Commission's determination that a termination without the requisite due process is illegal.
For the foregoing reasons, I respectfully dissent.
BELSOME, J., Dissents with Reasons.
I respectfully disagree with the majority's opinion.
Our Supreme Court has recognized that the Civil Service Commission process was instituted to protect an employee's position, an acknowledged property right, from unwarranted employer abuses. New Orleans Firefighters Assoc. v. Civil Service Commission of the City of New Orleans, 422 So.2d 402 (La.1982). Potential governmental abuses are avoided through statutory regulations that must pass Constitutional muster. The protection afforded the employees in the instant case is found in Rule IX, § 1.2, which mandates that the appointing authority conduct a pre-termination hearing as well as notify the employee of their infraction.
Recently, the Supreme Court has further directed us to redefine the mandatory language contained within a statute. Marks v. New Orleans Police Department, XXXX-XXXX (La.2006), 943 So.2d 1028. In Marks the Court found that in the absence of any evidenced prejudice to the employee the word "shall" was directive rather than compulsory. The "shall" in Marks referred to a 60-day time frame in which to investigate employees' misconduct. The Supreme Court reasoned that Marks' right to due process, notice and a right to be heard had not been violated by an investigation that exceeded the mandated 60-days.
Today we are confronted with the narrow issue of whether or not a post termination *615 hearing meets the minimum due process requirements outlined by the United States Supreme Court in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. In Loudermill the Court addressed what process is due an employee with a constitutionally protected property right. Id. The Loudermill Court found that notice and a pre-termination hearing was the constitutionally adequate procedure to avail an employee of his/her due process rights. Id.
Here we are presented with employees whose hearings came months after they were deprived of their livelihood. No rational court could conclude that the Due Process Clause requirement for a hearing "at a meaningful time" was met. Presumably, the determination of constitutionally protected due process hinges on whether or not the employee is prejudiced by the delay, not whether the employer is inconvenienced by being held to the constitutional standard.
Although the employer has argued, and the majority accepts, that Hurricane Katrina created an urgency that prevented pre-termination hearings, the records are void of any such evidence. Undoubtedly, Hurricane Katrina caused challenging situations that may or may not be designated as emergency conditions. But simply put, the Hurricane Katrina banner cannot be waived every time the government seeks to circumvent the constitution. Permitting such a broad excuse in the very limited question presented today opens the door for potential governmental abuse either through intent, incompetence, or indifference of employee rights. Arguably, this decision may negate collective bargaining agreements, as well as constitutionally protected rights in contract and habeas corpus.
This writer cannot join in an opinion that ignores the prejudice created by depriving an employee of his property right without the opportunity to first be heard and defend that right. The notion that due process was protected and no prejudice occurred when the employee was divested of his/her position first and allowed a post termination hearing months later is fictional. Allowing post termination hearings with no limitation on delays effectively abolishes the employees' constitutional right to due process.
Due process is most vulnerable when it is most warranted.
I dissent.
NOTES
[1] Rule IX, § 1.2 provides:

In every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking action.
[2] An additional issue raised on appeal was whether the NOPD could rely upon Rule IX, § 1.1 of the CSC Rules as setting forth prohibited conduct by classified employees. Although the termination letters sent to each of the officers did not cite an internal NOPD rule violated by them, the letters stated that the officers had not reported to duty, had abandoned their posts, etc., without permission and/or contact with their chain of command. Under the circumstances, we find the NOPD's failure to cite a specific internal rule is without moment for such a violation is so obvious that a citation of authority is unnecessary. Thus, we find that Knight v. Department of Police, 619 So.2d 1116, 1120 (La.App. 4 Cir.), writ denied, 625 So.2d 1058 (La.1993), is inapplicable to this case.
[1] See also, Goss v. Lopez, 419 U.S. 565, 580, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)(citing Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951)) (Frankfurter, J., concurring) ("`[F]airness can rarely be obtained by a secret one-sided determination of facts decisive of rights. . . .' `Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised than to give a person in jeopardy of serious loss notice of the case against him and an opportunity to meet it.'").
[2] Notably, the City submitted no evidence into the record before the Commission or this court to support its claim that exigent circumstances required that due process requirements be cast aside approximately two months after Hurricane Katrina, although asserting that the City should be excused from failing to make any attempt to afford the accused officers minimal notice and opportunity to be heard because of exigent circumstances. Apparently, evidentiary rules as well as constitutional due process should be disregarded with regards to those cases arising out of the Hurricane Katrina aftermath. It is somewhat ironic, however, that the City argues that the catastrophic conditions following Hurricane Katrina created an excuse for the City's failure to follow clear constitutional mandates while, in effect, arguing that their employees should be afforded no opportunity to explain their own failures in the post-Katrina chaos.
[3] Both the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the 1974 Louisiana Constitution specifically protect a person against deprivation of his/her life, liberty, or property with "due process of law", a term which simply means that persons whose rights may be affected are entitled to be heard and, in order to enjoy that right, must first be notified.
[4] "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits." Wilson, supra, (citing Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915)).
[5] See Paillot v. Wooton, 559 So.2d 758, 761 n. 3 (La.1990) (informal hearing process involving merely discussing with student misconduct which has occurred only moments before may be sufficient in some cases but "such opportunity must be provided"; post-deprivation notice and rudimentary hearing sufficient only "when student poses a continued threat of danger to persons or property or disruption to the academic process").
[6] See Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986) (employment reallocation) and Wilson, supra (temporary impoundment of a vehicle when the owner fails to present proof of insurance); see also Ewing v. Mytinger Casselberry, Inc. 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (challenged statute permitting multiple seizures of misbranded articles on a finding of probable cause by an administrator, without a hearing, is not unconstitutional under the due process clause); North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (due process of law is not denied the owner or custodian of food in cold storage by a municipal ordinance under which such food, when unfit for human consumption, may summarily be seized, condemned, and destroyed by municipal officers without a preliminary hearing); F.D.I.C. v. Mallen, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (bank official not entitled to pre-suspension hearing under statute authorizing suspension from office of indicted official of federally insured bank; important governmental interest in protecting depositors and maintaining public confidence, coupled with the fact that felony indictment provided sufficient assurance that suspension was not baseless, justified prompt action before suspensions hearing was held).
[7] See, e.g., Bell, 483 So.2d at 951 (distinguishing termination situation from reallocation); Fields, 714 So.2d at 1255 ("In the instant case, we are dealing only with the temporary impoundment of a motor vehicle because it did not contain the statutorily required proof of insurance").
[8] In a similar vein, the City characterized reinstatement with backpay as a "reward" and argued that its interest in "maintaining the battered public fisc", combined with the catastrophic conditions following Hurricane Katrina, outweighs any individual's right to a pre-termination hearing as long as some sort of post-deprivation hearing can be devised. Notably, no jurisprudence (including that cited by the City) supports the proposition that concern for public finances in the aftermath of a community catastrophe outweighs the due process rights of individuals or that a governmental entity is entitled to affirmation of its transgressions because to find otherwise will ultimately be at the cost of the public treasury, nor did the issue of the "battered public fisc" merit consideration in the recent decision, DeCorte v. Jordan, 497 F.3d 433 (5th Cir.2007).
[9] See, e.g., Fuller, et al. v. Department of Fire, 07-0369, 2007 WL 2966326, ___ So.2d ___ (La. 4 Cir. 9/19/07) (reversing suspension of firefighters who were absent from their posts after the hurricane, failing to return until well after the September 22, 2005, deadline imposed by the New Orleans Fire Department, because application of across-the-board deadline for return was arbitrary and capricious when co-workers had failed to convey cut-off date to them and firefighters "did the best they could under horrific conditions to return to work as quickly as possible").
[10] See CSC Rule IX § 1.2 (amended effective February 1, 1988; emphasis added) ("In every case of termination of employment of a regular employee, the Appointing Authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking action").
[11] In Knight v. Department of Police, 619 So.2d 1116, 1118 (La.App. 4th Cir.), writ denied, 625 So.2d 1058 (La.1993), the court clearly stated that Rule IX is directed to the appointing authorities and "simply cannot be construed as a rule setting forth prohibited conduct by classified employees." Knight, 619 So.2d at 1120; see also Brumfield v. Department of Fire, 488 So.2d 1181 (La.App. 4th Cir.1986) (reversing Commission's ruling that the Superintendent of the Fire Department acted within its boundaries of the regulations of the Department of Fire in invoking Rule IX of the Civil Service Commission to dismiss the plaintiff for inability or unwillingness to perform his duties basis for their termination).