PAUL A. BONIN, Judge.
 

 |! Donna Aubert appeals the decision of the New Orleans Civil Service Commission upholding her termination as a police officer. For the reasons which follow, we affirm.
 

 I. Background Facts
 

 When Hurricane Katrina struck New Orleans on August 29, 2005, Ms. Aubert was employed as a police officer in the New Orleans Police Department. She was assigned to the Seventh District under the command of Captain Robert Bardy. Unable to report to the district’s headquarters immediately following the storm, she initially reported to Methodist Hospital, which was situated in the district’s territory. For a day or two she assisted medical professionals in often futile efforts to sustain the fives of patients stranded in the facility. Upon the evacuation of the hospital, she relocated to Crystal Palace reception hall, which had become the refuge of the district.
 

 
 *1214
 
 A large contingent of the district’s officers were located at the Crystal Palace. Some of the officers were accompanied by family members, some of pwhom were elderly or infants. One of the officers, Abr-eace Daniels, became concerned that the civilians and some of the female officers, including Ms. Aubert, were becoming emotionally distressed. Officer Daniels felt that they needed time and a place to refresh themselves. He communicated his concerns to Captain Bardy.
 

 On September 1, 2005, while Captain Bardy was away for a meeting with the Superintendent of Police, Officer Daniels apparently organized a convoy of vehicles to take the Seventh District officers and family members from the Crystal Palace. Ms. Aubert was one of the passengers. Captain Bardy serendipitously encountered the convoy near the Crescent City Connection bridge.
 

 Captain Bardy and Officer Daniels do not agree about the exchange which occurred between them during the encounter. Captain Bardy contends that he urged the district’s officers to return to duty at the Crystal Palace and that many of them did so. With respect to those who would not, the captain relented to permit them to continue on to the Fourth District headquarters located across the Mississippi River, which was fully functioning with water, electricity, and telephones. After refreshing themselves and making efforts to contact relatives, the officers were to return to the Crystal Palace.
 

 Officer Daniels contends that Captain Bardy authorized him to continue with the convoy to Baton Rouge, where he headed. There was trouble with a vehicle which prevented the officers from returning to the Crystal Palace until the following day. All the male officers and most of the female officers in the convoy ^returned to the Crystal Palace on September 2, 2005. Ms. Aubert did not return with them. She took a flight from Baton Rouge to Maryland where she remained with relatives for a couple of weeks until she went to Tunica, Mississippi. Some time in late September or early October she returned to her home in Uptown New Orleans, which was not damaged in the storm. She never reported back in person to the Crystal Palace or to the subsequent command post for the district.
 

 After Captain Bardy listed Ms. Aubert as unaccounted for among the ranks of his district, the Superintendent of Police, as the appointing authority, terminated her as a police officer due to her unwillingness to perform the duties of a police officer.
 

 II. Civil Service Proceedings Below
 

 Ms. Aubert did not receive the ordinary pre-termination hearing afforded to employees in the classified civil service before she was notified of her termination in writing by the superintendent. Ms. Aubert did timely appeal her termination by the superintendent to the New Orleans Civil Service Commission. The commission assigned the matter to a referee before whom testimony and documentary evidence were adduced on March 29, 2006. Initially, the commission ruled in favor of Ms. Aubert because she had not received a pre-termination hearing.
 

 The Appointing Authority appealed that decision and, in an
 
 en banc
 
 decision in consolidated cases presenting the same issue, we reversed the commission.
 
 Reed v. Department of Police, 06-1498, 06-1500, 06-1647, 07-0171, 07-0360, 07-0361, 07-0364, 07-0366, 07-0367, 07-0368, 07-0796, 07-0797
 
 (La.App. 4 Cir. 10/10/07), 967 So.2d 606. In
 
 Reed
 
 we remanded the matter to the commission | ¿with instructions to reopen the case in order to allow Ms. Aubert to adduce evidence of any prejudice to her case related to the delay and to submit additional evidence. A subsequent
 
 *1215
 
 hearing was held on May 29, 2008, at which Ms. Aubert waived her appearance and provided no additional evidence. On December 4, 2008, three members of the commission, constituting a requisite quorum, in a written decision denied Ms. Au-bert’s appeal. From that decision Ms. Au-bert has appealed to this court.
 

 III. Assignments of Error and Opposing Contentions Thereto
 

 Ms. Aubert assigns as errors: the Commission’s failure to reinstate her because there was no evidence that she was unwilling or unable to perform her job satisfactorily or that she abandoned her position; the Appointing Authority’s failure to state clearly a lawful cause in its disciplinary termination letter of October 24, 2005; the Appointing Authority’s erroneous reliance on Civil Service rules, instead of its own regulations, to discipline and terminate Ms. Aubert; the Commission’s failure to rule that the Appointing Authority is estopped from disciplining Ms. Aubert twice (i.e., imposing both a 30-day suspension and termination) for a single alleged violation of duty under the rules of the Appointing Authority; the Commission’s erroneously upholding the excessive discipline of the Appointing Authority; and the Appointing Authority and Commission’s violation of Ms. Aubert’s rights under the Equal Protection Clause of the state and federal constitutions by not affording her a pre-termination hearing while affording other civil service employees a pre-termi-nation hearing.
 

 |fiThe Appointing Authority contends that this court cannot modify or reverse the decision of the Commission absent a showing that its decision was arbitrary, capricious or characterized by an abuse of discretion, when no rational basis exists for the action taken.
 
 Russell v. Mosquito Control Bd.,
 
 06-0346 (La.App. 4 Cir. 9/27/06), 941 So.2d 634;
 
 Mendoza v. Dept. of Police,
 
 08-0062 (La.App. 4 Cir. 8/20/08), 991 So.2d 1155. It contends that Ms. Au-bert did not deny that she abandoned her post during the post-hurricane crisis in the city, establishing legal cause for her discipline and the denial of her appeal of her termination. And the Appointing Authority argues that the due process Ms. Aubert complains of is a flexible standard, and the emergency situation that existed during the hurricane outweighed the normal scheduling of a pre-termination hearing. The opportunity to be heard in a meaningful manner and at a meaningful time meets the criteria of due process, within the parameters of
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and
 
 Morrissey v. Brewer,
 
 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484(1972) (stating that the concept of due process is characterized by “[i]ts flexibility ... in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure”).
 

 IV. Employee Rights Under Civil Service Procedure
 

 “No person who has gained permanent status in the classified ... city service shall be subjected to disciplinary action except for cause expressed in writing.” La. Const., art. X, § 8(A); La. Const., art. X, § 1(B). New Orleans police officers are included in the protection guaranteed by this provision.
 
 Walters v. Dept. of Police of New Orleans,
 
 454 So.2d 106, 112 (La.1984).
 
 [1]
 
 “Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.”
 
 Cittadino v.
 
 
 *1216
 

 Dept. of Police,
 
 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
 

 The U.S. Supreme Court considers this type of tenured civil service employment to be a property right which is protected by the Due Process Clause of the U.S. Constitution. The Supreme Court in
 
 Cleveland Bd. of Educ. v. Loudermill,
 
 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), held:
 

 The essential requirements of due process ... are notice and an opportunity to respond .... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.
 

 Further, the
 
 Loudermill
 
 Court explained: “the point is straightforward: the Due Process Clause provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures ... the right to due process ‘is conferred not by legislative grace but constitutional guarantee.’ [citation omitted].”
 
 Id.
 
 at 541, 105 S.Ct. 1487.
 

 It is a basic precept of our system of justice, fair play, and due process that one accused' — of a crime, an administrative breach of conduct or code violation, or a civil tort — be given notice of that which he or she is alleged to have done or failed to have done. Thus our jurisprudence has required that written notice be given to a public employee.
 
 See
 
 La. Const., art. X, § 8;
 
 Williams v. Dept. of Property Mgmt.,
 
 02-1407, p. 2 (La.App. 4 Cir. 4/16/03), 846 So.2d 102, 104;
 
 Riggins v. Dept. of Sanitation,
 
 617 So.2d 112 (La.App. 4th Cir.1993). In
 
 Webb v. Dept. of Safety & Permits,
 
 543 So.2d 582 (La.App. 4th Cir.1989), we held that [/‘notice of the charges should fully describe the conduct complained of ... to enable the employee to fully answer and prepare a defense.” More recently, in
 
 Williams
 
 the City terminated the plaintiff, a city motor vehicle examiner, on the basis of her alleged alteration of her time card for Friday, April 13, 2001. This incident was the only matter discussed at her pre-termination hearing. After the hearing, two other incidents of payroll fraud were discovered, and Williams was terminated. The termination letter listed three separate occasions of payroll fraud. We stated:
 

 Since the Department of Property Management used these other two incidents of payroll fraud to reach its decision to terminate plaintiffs employment, the plaintiff was entitled to notice of these additional charges and an opportunity to present a defense in regards[sic] to these additional charges. The requirements of La. Const. Art. 10 § 8 and
 
 Loudermill
 
 were not met.
 

 Id.
 
 at p. 5, 846 So.2d 102 at 105.
 

 The Civil Service Commission (“Commission”) has the exclusive power and authority to hear and decide all removal and disciplinary cases. La. Const., art. X, § 12;
 
 Pope v. New Orleans Police Dept.,
 
 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The Commission has a duty to decide independently from the facts presented whether the Appointing Authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment is commensurate with the dereliction of duty.
 
 Walters v. Department of Police of New Orleans,
 
 454 So.2d 106 (La.1984). “The Commission should give heightened regard to the appointing authorities that serve as special guardians of the public safety and operate as quasi-military institutions where strict discipline is imperative.”
 
 Whitaker v. New Orleans Police Dept.,
 
 03-0512, p. 4 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575.
 

 
 *1217
 
 |sBefore the Commission, “the burden of proof on appeal,
 
 as to the facts,
 
 shall be on the appointing authority.” La. Const., art. X, § 8(A) (emphasis added);
 
 Walters, supra, at
 
 112-18. “The appointing authority must prove by a preponderance of the evidence
 
 the occurrence of the complained of activity
 
 and that the conduct impaired the efficient operation of the public service.
 
 Newman v. Dept. of Fire,
 
 425 So.2d 753, 754 (La.1983);
 
 Cittadino,
 
 558 So.2d at 1315 (La.App. 4 Cir.1990).”
 
 Barquet v. Dept. of Welfare,
 
 620 So.2d 501, 505 (La.App. 4th Cir.1993) (emphasis added);
 
 Cure v. Dept. of Police,
 
 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094,
 
 citing Marziale v. Dept. of Police,
 
 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767.
 

 The Commission assigned the appeal to its referee in accordance with established procedure: “[The Commission] may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses.” La. Const., art. X, § 12(B).
 

 After reviewing the transcript of the hearing testimony and all documentary evidence, the Commission issued a written report on December 4, 2008, which concluded:
 

 It is not credible that Capt. Bardy gave permission to his subordinates to leave their posts for an indefinite period of time. Capt. Bardy’s testimony that he gave his subordinates permission to go to the Fourth District Police Station to make telephone calls, and check on their families is more credible. Based upon the foregoing, the Appointing Authority has established by a preponderance of the evidence that it terminated the Appellant for cause, and the appeal is DENIED.
 

 V. Standard of Appellate Review
 

 The appellate court must apply the clearly-wrong or manifest-error standard with regard to factual findings made by the Commission.
 
 Russell v. Mosquito Control Bd.,
 
 06-0346 (La.App. 4 Cir. 9/27/06), 941 So.2d 634. Absent a showing that the Commission’s decision was arbitrary, capricious or characterized by an abuse of discretion, this court should not disturb the decision of the Commission.
 
 Mendoza v. Dept. of Police,
 
 08-0062, p. (La.App. 4 Cir. 8/20/08), 991 So.2d 1155, 1163. A determination is arbitrary or capricious only when there is no rational basis for the action taken.
 
 Id.
 

 The Commission’s decision is subject to appellate review on any question of law or fact, determining if its order was arbitrary, capricious, or characterized by an abuse of discretion. La. Const., art. X, § 12(B);
 
 Barquet,
 
 620 So.2d at 505;
 
 Cure,
 
 07-0166 at p. 2, 964 So.2d at 1095;
 
 Walters,
 
 454 So.2d at 114. When there is no rational basis for the Civil Service Commission’s action, its decision is arbitrary and capricious.
 
 Bannister v. Dept. of Streets,
 
 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
 

 The judicial review function in a matter appealed from a civil service commission is “multifaceted,”
 
 Walters,
 
 454 So.2d at 113-14:
 

 In reviewing the commission’s procedural decisions and interpretations of law performs its traditional plenary functions of insuring procedural rectitude and reviewing questions of law. Due concern both for the intention of the constitution and for the boundaries between the functions of the commission and of the court, however, demands that a reviewing court exercise other aspects of its review function with more circumspection. In reviewing the commission’s findings of fact, the court should not reverse or modify such a finding unless
 
 *1218
 
 it is clearly wrong or manifestly erroneous. In judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. R.S. 49:964;
 
 Save Ourselves, Inc. v. The La. Environmental Control Comm.,
 
 452 So.2d 1152 (La.1984);
 
 Weyerhaeuser Co. v. Costle,
 
 590 F.2d 1011 (D.C.Cir.1978); K. Davis, Administrative Law (1982 Supp.) at 586 et seq.
 

 |inIn reviewing the Commission’s findings of fact, the appellate court should not reverse or modify a finding unless it is clearly wrong or manifestly erroneous.
 
 Walters,
 
 454 So.2d at 113.
 

 VI. Review of the Factual Findings
 

 Because Ms. Aubert did not deny that she left her duty post, and she presented no new evidence to the Commission, we confirm the factual findings of the Commission after its review of the transcript and all evidence before it, particularly inasmuch as the Commission believed the testimony of Capt. Bardy was credible. Ms. Aubert justified her absence on the basis that Captain Bardy had given her and other officers under his command permission to leave their police duties indefinitely despite a catastrophe of epic proportions. Captain Bardy denied that he granted such permission. The commission made a factual determination on this central issue in favor of the appointing authority and against Ms. Aubert. We have reviewed this factual determination under the manifest error standard. In
 
 Adams v. Department of Police,
 
 08-0468 (La.App. 4 Cir. 2/12/09), 7 So.3d 763, 765, we stated:
 

 The Commission’s decision is subject to review on any question of law or fact upon appeal. La. Const, art. X, § 12. This court applies the manifest error standard of review to the Commission’s findings of fact ... In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Commission’s order unless it was arbitrary, capricious, or characterized by an abuse of discretion .... if there is no rational basis for the Commission’s action.
 

 See also Banks v. New Orleans Aviation Board, 08-0065,
 
 p. 7 (La.App. 4 Cir. 7/9/08), 989 So.2d 819, 823 (stating that “the review of procedural decisions and Inquestions of law falls within this court’s traditional plenary function. As such, we are not limited to abuse of discretion or arbitrary and capricious standards of review in these instances”);
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989).
 

 Not a single witness who testified on Ms. Aubert’s behalf supports her contention that Captain Bardy authorized her to leave indefinitely. While Officer Daniels disputed Captain Bardy’s testimony that the convoy was only permitted to travel to the Fourth District station for the limited purposes of using its facilities, at no time does he contend that indefinite leave was granted to
 
 any
 
 Seventh District officer. In fact, Officer Daniels and most of the other officers in the convoy planned to return the
 
 same
 
 day to the Crystal Palace. Only because of unexpected vehicle troubles was their return delayed by one day.
 

 Lieutenant Kim Williams contacted friends from the district to encourage them to return to duty. Among those friends was Ms. Aubert, who in those contacts offered excuses to her friend the Lieutenant why she would not return to duty immediately. Although she claimed she had permission to be absent, she ex
 
 *1219
 
 pressed acquiescence to the idea that she would be suspended for 30 days or that she possibly was already under suspension. Oddly, despite returning to her home in New Orleans, Ms. Aubert never personally sought out a meeting with Captain Bardy or any other of her superior officers. She took no steps for her return to duty until she received written notice that she had been terminated. This was at least ten days after the time that any 30-day suspension would have expired.
 

 With respect to Ms. Aubert’s argument that her unwillingness to perform the duties of a police officer does not prejudice the efficiency of the public service, we need not dwell too long. Clearly Captain Bardy was desperate for his subordinate officers to return to their posts. The willful abandonment by Ms. Aubert on | ^September 1, 2005, and her ongoing willful refusal to return to New Orleans
 
 and
 
 to her police duties indisputably impairs the efficient operation of the police department. We conclude that the Commission’s finding that Captain Bardy’s testimony is credible is not manifestly erroneous. From that finding, it is clear that Ms. Aubert deserted the city, her commander, and the majority of her fellow officers in the Seventh District.
 

 VII. Due Process Argument of Ms. Aubert
 

 We consider the due process argument Ms. Aubert raises as the pivotal issue before the Commission and this court. We addressed this specific issue in the
 
 Reed
 
 case, and that ruling is disposi-tive in holding that the unique circumstances of post-Katrina New Orleans and the maintenance of the police presence and discipline in working to control the decimated city made acceptable NOPD’s provisions for due process. Our law is now clear that the post-Katrina hearing which took place after, rather than before, the appellant’s deprivation of her job was sufficient during the extraordinary circumstances of the disaster-struck city. Although not referenced in the Appointing Authority’s brief, this court’s decision in
 
 Reed v. Department of Police,
 
 06-1498,
 
 supra,
 
 is dispositive of Ms. Aubert’s due process contentions. We stated:
 

 We hold that Hurricane Katrina, with its effects upon the city of New Orleans and its government, was an extraordinary event such that the NOPD could discipline the officers without a pre-termi-nation hearing. We further hold that, under these unique circumstances, a post-termination hearing, which allows the accused officer an opportunity to present all relevant evidence he/she would have introduced at a pre-termi-nation hearing to overturn the NOPD’s decision, satisfies the due process requirements of both the United States and Louisiana Constitutions.
 

 Reed,
 
 p. 4, 967 So.2d at 610.
 
 See Marks v. New Orleans Police Dept.,
 
 06-0575 (La.11/29/06), 943 So.2d 1028 (wherein Justice Wiemer discusses the parameters of due process and legislatively created governance of civil servants, particularly law enforcement personnel). As the U.S. Supreme Court stated in
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18, (1976): “[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.” We have recognized that there is no bright-line rule for prejudicial delay,
 
 See Bovia v. Dept. of Police,
 
 08-0710, p. 5 (La.App. 4 Cir.1/7/09), 2 So.3d 1159, 1162.
 

 Ms. Aubert did not supplement the record before the Commission when she had an opportunity. Accordingly, the Commission’s review of the evidence and the record, and its findings as to the credibility of
 
 *1220
 
 Capt. Robert Bardy and Lt. Kim Williams had a rational basis, and were not arbitrary, capricious, or characterized by an abuse of discretion. We affirm the decision of the Commission.
 

 AFFIRMED
 

 [1]
 

 . See also La. Const., art. X, § 1(B).