CHARLES R. JONES, Chief Judge.
Ijn this appeal, Officer Damond Harris seeks review of the decision of- the Civil Service Commission (Commission), denying his appeal of the discipline imposed by the appointing authority, the New Orleans Police Department (NOPD). Finding that the Commission erred in denying the appeal of Officer Harris because the NOPD failed to provide Officer Harris meaningful notice of his disciplinary hearing, we vacate the decision of the Commission.
On December 29, 2010, the NOPD transmitted a disciplinary letter to Officer Har *1126 ris. Therein, the NOPD indicated that it had determined Officer Harris violated the rule relative to professionalism, and the rule relative to social networking websites. As a result, the NOPD suspended Officer Harris for two days for each violation, for a total suspension of four days without pay.
Officer Harris appealed the suspension to the Commission, which appointed a hearing officer to receive testimony.
At the hearing, the NOPD called Officer Harris to testify. Officer Harris admitted that in January 2010, he responded to the Facebook post of a fellow officer, Officer William Torres. Officer Torres posted:
[t]hanks for the shots last night. Btw, You shouldn’t of cut your hair. Bowl hair cuts are for boys. Oh, tell your |sex g/f better not tell me s — , because we went out after your break up. A.M. you are a douchebag.
Officer Harris responded as follows:
WOW!!! Damn Will you steal a dykes girlfriend, stomp her like a german blitzkrieg, then the dykes get mad and now they are fighting over your caliente cho-rizo. Lmao what is this world coming to lmao.
Later in the same thread, Officer Harris posted another comment:
ATTENTION!!!! All dykes. Keep your dyke girlfriend away from Will Torres cause he will turn her straight and have her smoking pole by nights end. Lol.
Officer Harris testified that he did not know that Officer Torres was speaking of fellow officer Athena Monteleone, when Officer Torres utilized the initials, “A.M.” in his January 2010 post. Officer Harris testified that he was off-duty, engaging in banter with Officer Torres. Officer Harris testified that he often engaged in this sort of banter with his friends that he made while in the Marine Corps, such as Officer Torres. Officer Harris testified, he did not intend to direct his Facebook comments at any individual person. At the time of the Facebook quote, Officer Harris testified that he did not know that Officer Torres had gone on a date with Officer Monteleone’s ex-girlfriend. Officer Harris testified that he has known Officer Torres for 15 years and that he was speaking generally as Officer Torres has a reputation for turning “gay girls straight.”
Officer Harris also testified that during his banter with Officer Torres, he did not identify himself as a police officer. Further, Officer Harris noted that he does not identify himself as a police officer on his Facebook page.
Officer Harris further testified that he did not intend any offense to Officer Mon-teleone, and that he, Officer Torres, and Officer Monteleone were all SWAT members at one time and became good friends. They had spent time in one |4another’s homes and engaged in teasing. Also, Officer Harris admitted that part of his teasing consisted of calling Officer Monteleone a “dyke”, noting that she teased him by calling him “gay boy” and “fag boy.[1]” Officer Harris noted that Officer Monteleone is openly gay and used to tease the male officers by telling them “I’m going to take your girlfriend. You better watch yourself.”
Officer Harris testified that by early January 2010, Officers Torres and Montel-eone were no longer working with him as part of SWAT, and that he (Officer Harris) received an administrative notice to have no contact of a personal nature with Officer Monteleone.
*1127 The NOPD next called Sgt. Dan Anderson to testify. Sgt. Anderson testified that Officer Monteleone believed, that she was the “A.M." to whom Officer Torres referred and initiated a complaint. He further testified that the NOPD assigned him to investigate the matter, and that this particular investigation was unusual.
Sgt. Anderson testified that during the course of his investigation, he interviewed Officer Torres, who admitted that he was referencing Officer Monteleone when he used the initials “A.M.” in the Facebook post, but that Officer Torres testified that he did not intend to offend Officer Montel-eone. Sgt. Anderson testified that the Fa-cebook conversation was initially between Officer Torres and Angela Joanos. Sgt. Anderson testified that Officer Torres had a relationship with Ms. Joanos after Ms. Joanos and Officer Monteleone were no longer a couple. After Officer Torres posted the comments, Sgt. Anderson testified that Ms. Joanos informed Officer Monteleone about the Facebook comments. From there, Officer |5Monteleone emailed her chain of command requesting a meeting and testified that she was not comfortable returning to work until the matter was addressed..
Sgt. Anderson testified that he believed the use of the words “douchebag” and “dyke” in the Facebook comments were unprofessional. Sgt. Anderson noted that Officer Monteleone was insulted and felt threatened by the comments. Sgt. Anderson testified that Officer Monteleone felt uncomfortable at work over the Face-book comments.
After the hearing, the Commission issued a decision denying Officer Harris’ appeal, thus upholding the four-day suspension meted out by the NOPD. From that denial, Officer Harris filed the instant motion for appeal.
The Commission has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const, art. X, § 12; Pope v. New Orleans Police Dept., 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The Commission is not charged with such discipline. The authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Pope, 04-1888, pp. 5-6, 903 So.2d at 4.
The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service |fiemployees is only against firing (or other discipline) without cause. La. Const, art. X, § 12; Cornelius v. Dept. of Police, 07-1257, 07-1258, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 00-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
The decision of the Commission is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12; Cure, 07-0166, p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Commission order unless it was arbitrary, capricious, or characterized *1128 by an abuse of discretion. Id. A decision of the Commission is “arbitrary and capricious” if there is no rational basis for the action taken by the Commission. Cure, 07-0166, p. 2, 964 So.2d at 1095.
As we find it to be dispositive of the case, we first address the second assignment of error of Officer Harris. In that assignment of error, Officer Harris alleged that his due process rights were violated as the pre-disciplinary hearing was held on the same date that Officer Harris received notice of the pre-disciplin-ary hearing.
In response, the NOPD averred that Officer Harris.failed to raise this argument before the Commission, and that Officer Harris was prohibited from raising the argument on appeal. Further, the NOPD argued that due process was satisfied as Officer Harris received notice of the charges against him on March 8, 2010.
|7Generally, appellate courts will only review issues which were submitted to the district court. Uniform Rules — Courts of Appeal, Rule 1-3. However, appellate courts may review issues which were not submitted to the district court when the interest of justice clearly requires it to do so. Uniform Rules — Courts of Appeal, Rule 1-3.
In support of his argument that the interest of justice requires this Court to review his due process argument, Officer Harris cited Maurello v. DHHR, Office of Mgmt. Finance, 510 So.2d 458 (La.App. 1 Cir.1987). Therein, Ms. Maurello raised a due process argument for the first time on appeal. The court addressed the due process argument stating, “[b]ecause of the importance of assuring that Ms. Maurello’s fundamental constitutional due process rights are met, we will entertain her challenge of the termination procedure used by DHHR.” Id., 510 So.2d at 460. We agree that the interest of justice clearly requires us to review the issue of whether the due process rights of Officer Harris were violated.
Both the U.S; Constitution and the Louisiana Constitution provide that a person may not be deprived of “life, liberty, or property without due process of law.” U.S. Const, amend. XIV, La. Const. Art. I, § 2. In Reed v. Department of Police, 06-1498, 06-1500, 06-1647, 07-0171, 07-0360, 07-0361, 07-0364, 07-0366, 07-0367, 07-0368, 07-0796, 07-0797, pp. 3-4 (La.App. 4 Cir. 10/10/07), 967 So.2d 606, 609, we noted:
The provisions of the state constitution involving the Civil Service, Article X, § 1 et seq., and the Rules of the Commission are designed to secure adequate protection to the public career employee from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the Civil Service Rules is to guarantee the security and welfare of the public service. Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980) (emphasis | Radded). With this in mind, it is clear that tenure or classified civil service status is a property right within the meaning of Article I, § 2 of our constitution, a prerequisite to a due process challenge. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980). Under our constitution and the Civil Service Rules, an employee who has gained classified permanent civil service status has an entitlement to his position, since he has already received the position, and applicable law guarantees him continued employment, save for some exceptions (i.e. disciplinary sanctions for cause). Cleveland Bd. of Educ. v. Loudermill, supra [470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ]; Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 *1129 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Having concluded that a classified permanent employee enjoys a property right in maintaining his status, it is axiomatic that his position may not be changed or abolished without due process of law. Cleveland Bd. of Educ., supra. The question becomes what process is due.
Id., quoting Bell v. Dept. of Health and Human Res., 483 So.2d 945, 949-50 (La.1986).
Thus, Officer Harris enjoys a property right in maintaining his employment status.
Officer Harris, as a classified permanent employee, enjoys a property right in, and is entitled to, his position. ■ Further, applicable law guarantees him continued employment, which may not be changed without due process of law.
However, in addressing the question of procedural due process, we find that “[The] central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified.” Moore v. Ware, 01-3341, pp. 12-13 (La.2/25/03), 839 So.2d 940, 949, quoting Wilson v. City of New Orleans, 479 So.2d 891, 894 (La.1985). The Moore Court 19went on to note that “[c]orrelatively, this right to notice and opportunity must be extended at a meaningful time and in a meaningful manner.” Moore, 01-3341, p. 13, 839 So.2d at 949, citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).
Officer Harris argued receiving notice of the disciplinary hearing date at the same time as the disciplinary hearing was not meaningful. By the plain language provided in the notice of the hearing date, the NOPD obviously agrees. The disciplinary hearing notification provides “APPENDIX 'A’ SHALL BE ISSUED TO AND SIGNED FOR BY THE ACCUSED EMPLOYEE AT LEAST FIVE (5) CALENDAR DAYS PRIOR TO THE DATE OF THE HEARING.” (Emphasis supplied in the original.). In this instance, the NOPD violated its own internal rules by providing Officer Harris notice of the disciplinary hearing date on the same day as the disciplinary hearing. We find the notice provided in this case was not extended in a meaningful time and manner as required by Moore.
For this reason, we vacate the decision of the Commission and set aside Officer Harris’ suspension. While we vacate the discipline based on the failure of the NOPD to comply with due process requirements, this opinion shall not preclude the NOPD and the Commission from reconsidering this matter after a meaningful notice and the opportunity to h (¡respond are provided to Officer Harris. We pre-termit discussion of the remaining assignments of error.
DECREE
For the foregoing reasons, the decision of the Civil Service Commission is vacated.
VACATED

. The NOPD introduced the statement of Officer Harris taken on February 15, 2010. Therein, Officer Harris noted that Officer Torres also engaged in teasing with Officer Mon-teleone and others, and that they often called each other names, including "douche.”